719 A.2d 674 (1998)
316 N.J. Super. 46
STATE of New Jersey, Plaintiff-Respondent,
v.
Lisa PYATT, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1998.
Decided November 6, 1998.
*675 Ivelisse Torres, Public Defender, for defendant-appellant (Jean M. Hartmann, Designated Counsel, of counsel and on the brief).
Peter Verniero, Attorney General, for plaintiff-respondent (Craig V. Zwillman, Deputy Attorney General, of counsel and on the brief).
Before Judges LONG, KESTIN and CARCHMAN.
The opinion of the court was delivered by KESTIN, J.A.D.
In 1993, defendant was convicted of murder, third degree possession of a weapon (a knife) for unlawful purpose, and fourth degree unlawful possession of the weapon. She was sentenced to a forty-year prison term with thirty years of parole ineligibility on the merged convictions. We affirmed the convictions and sentence in an unpublished opinion, and the Supreme Court denied certification. 142 N.J. 459, 663 A.2d 1364 (1995).
Soon thereafter, defendant filed this petition for post-conviction relief. In 1996, the petition was denied without a plenary hearing following oral argument based on the papers filed by the parties. Defendant appeals from the order of denial, arguing that she was entitled to an evidentiary hearing on the petition because she had made a prima facie showing as to "numerous instances" of ineffective assistance on the part of both trial and appellate counsel.
After reviewing the record in the light of the arguments advanced by the parties, we conclude that, with a single exception, no plenary hearing was necessary to dispose of the issues raised regarding ineffective assistance of counsel; and that, as to those issues, the petition was correctly denied for the reasons stated by the trial court judge in his oral opinion. The exceptional issue arises from defendant's contention that her trial attorney failed to advise her of a plea offer and to counsel her appropriately with respect to it.
The issue was presented to the trial court on conflicting written statements. The papers filed in support of defendant's post-conviction relief application included her own affidavit and that of her appellate counsel on all the issues raised, as well as the certifications of each of her parents addressing the plea offer issue primarily. The State had procured and submitted a contrary certification from defendant's trial counsel.
Defendant's April 13, 1994 affidavit laid out, in some detail, a number of trial counsel's alleged shortcomings and omissions. The plea offer issue was addressed in the affidavit's concluding paragraph:
36. Recently there was a murder trial in Ocean County and in early March the Asbury Park Press published an article about that case. In that article, reference was made to my case it [sic] stated that a plea offer of aggravated manslaughter had been made by the Prosecutor's Office and rejected by me. While I did on several occasions speak to [trial counsel] about what I might do if an offer was extended, he never told me that an actual plea offer had been made. I never knew that a plea offer had actually been extended and that I could have entered a plea to aggravated manslaughter.
Appellate counsel's April 14, 1994 affidavit recited in that respect:
12. There recently was an unrelated murder case pending in Ocean County which generated publicity. In the reporting of that case, reference was made to Lisa Pyatt's case and the article asserted that Lisa Pyatt had been extended a plea offer which had not been accepted. It was brought to my attention by Lisa Pyatt's family and my client, that Lisa Pyatt was never told, either prior to or during trial, that a formal plea offer had been extended.
13. Based upon this information I telephoned... the trial prosecutor [ ] and *676 asked him whether a formal plea offer was ever extended. He told me that a plea offer had been extended to Lisa Pyatt's [trial] counsel[.]
14. On March 29, 1994, I called [trial counsel] and asked him whether he informed Lisa Pyatt of the plea offer and whether the offer to Lisa was documented in any form. He told me that he informed Ms. Pyatt of the offer and that she rejected the offer. He informed me that his normal procedure was to place the fact of rejection on the record immediately prior to jury selection. He told me that if he placed the offer and rejection on the record it would be found in the September 13, 1993 trial transcript, since this date immediately prior to jury selection. [sic] I have reviewed that transcript and there is no mention of a plea offer or rejection.
15. Based upon my inquiry it appears that a very serious question and a factual dispute exists as to whether Lisa Pyatt was ever informed that a plea offer had been made and was available for her consideration and possible acceptance.
Trial counsel's certification, filed by the State, was dated December 22, 1995. With regard to the plea offer issue, it stated:
13. [D]uring the course of extensive preparation for the trial, Ms. Pyatt and I spoke on numerous occasions about the plea offer of aggravated manslaughter extended by the prosecutor's office. She refused to accept the offer and wished to proceed to trial. At one point, I invited Ms. Pyatt's parents, Carl and Patricia Pyatt, to my office.
I met with all three in my office and explained to them, in front of Ms. Pyatt, the offer extended and that she could accept that offer in lieu of trial. All parties present understood the risk involved in proceeding to trial. Ms. Pyatt made it clear that she did not want to plead guilty to anything and expressed this decision in front of her parents. I further emphasized that if the offer was reduced from an aggravated manslaughter charge to a manslaughter charge she should strongly consider it; her parents agreeing with my recommendation. Ms. Pyatt stated on this occasion and on many others that she would not plead guilty to any charge that involved any jail time. As such, we proceeded to trial at Ms. Pyatt's request, with all parties fully aware of the plea offer extended and the risks involved at trial.
During the course of the trial Carl Pyatt, Lisa's father, advised me that he complained directly and in person to [the] Ocean County Prosecutor ... that the aggravated manslaughter offer was unfair to his daughter.
I submit to the Court that all plea offers in this matter were properly relayed to Ms. Pyatt on numerous occasions and the defendant had absolutely no interest in the plea bargain at any time.
The certifications from defendant's parents, dated February 2, 1996, were substantially similar to each other. Regarding the plea offer issue, defendant's father recited:
2. I have read the certification of [trial counsel]. I have personal knowledge of the allegations contained in paragraph[ ] 13... and categorically deny them.
3. I did attend a meeting with [trial counsel], my daughter Lisa, and my wife. This was shortly before the trial started. At no time during this meeting did [counsel] indicate that the prosecution had made a plea offer in this matter. In fact, [counsel] was adamant the worst Lisa was facing was aggravated manslaughter, and hopefully, nothing worse than manslaughter. Had [counsel] advised that an offer had been made, it would have been discussed among the family, and, in my opinion, accepted. At no time did Lisa refuse to consider a plea which would have required a period of incarceration.
* * * *
5. During the course of the trial, after my testimony, I had occasion to speak with [the County] Prosecutor ... in the hallway outside of the courtroom. I asked [the prosecutor] why no plea offer had been tendered and was told by [him] that he thought an offer had been made. I told him that no offer was communicated to Lisa at any time.
*677 As is customary, the post-conviction relief application was heard by the same judge who had presided over the trial. That judge evaluated the conflicting statements in the light of his own memory of pre-trial and trial events and concluded that "[t]he only reasonable inference" available led to a conclusion that the plea offer had been conveyed by counsel and rejected by defendant.
On numerous occasions and in a variety of contexts, courts have opined on the impermissibility of deciding contested issues of fact on the basis of conflicting affidavits or certifications alone. See, e.g., Conforti v. Guliadis, 128 N.J. 318, 322, 328, 608 A.2d 225 (1992), aff'g, 245 N.J.Super. 561, 565, 586 A.2d 318 (App.Div.1991) (reformation of lease); Harrington v. Harrington, 281 N.J.Super. 39, 47, 656 A.2d 456 (App.Div.), certif. denied, 142 N.J. 455, 663 A.2d 1361 (1995) (existence of a binding agreement); Prostak v. Prostak, 257 N.J.Super. 75, 82-83, 607 A.2d 1349 (App.Div.1992) (valuation of property in a partition action); Wilke v. Culp, 196 N.J.Super. 487, 501, 483 A.2d 420 (App.Div.1984), certif. denied, 99 N.J. 243, 491 A.2d 728 (1985) (visitation); Fusco v. Fusco, 186 N.J.Super. 321, 327-28, 452 A.2d 681 (App.Div.1982) (visitation); Tancredi v. Tancredi, 101 N.J.Super. 259, 262, 244 A.2d 139 (App.Div.1968) (support arrearages); Metalsalts Corp. v. Weiss, 71 N.J.Super. 360, 361, 177 A.2d 53 (App.Div.1962) (existence of attorney-client relationship); First Nat'l Bank v. Viviani, 60 N.J.Super. 221, 224-25, 158 A.2d 704 (App.Div.1960) (sufficiency of service); Romano v. Maglio, 41 N.J.Super. 561, 573, 125 A.2d 523 (App.Div.), certif. denied, 22 N.J. 574, 126 A.2d 910 (1956), cert. denied, 353 U.S. 923, 77 S.Ct. 682, 1 L. Ed.2d 720 (1957); Mayflower Indus. v. Thor Corp., 15 N.J.Super. 139, 155-57, 83 A.2d 246 (Ch.Div.1951), aff'd, 9 N.J. 605, 89 A.2d 242 (1952); Hashomer Hatzair, Inc. v. East Windsor Twp., 176 N.J.Super. 250, 253-54, 1 N.J. Tax 115, 119-20, 422 A.2d 808 (Tax 1980) (filing date). The reasons for that principle are no less compelling in criminal cases than they are in other matters; and the vitality of the principle was undiminished in this case when the judge considering the post-conviction relief application brought his own memory of related events to bear on the resolution of the contested issues.
The plea bargain issue in this case clearly implicated facts dehors the record and events which occurred outside the presence of the judge while he was presiding over the criminal prosecution in its trial and pre-trial phases. The basic questionsincluding those relating to the nature and content of off-the-record conferences between defendant and her trial attorneybore critically upon defendant's claim of inadequate assistance of counsel, and could only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility. These types of determinations are best made through an evidentiary proceeding with all its explorative benefits, including the truth-revealing power which the opportunity to cross-examine bestows.
To the extent a post-conviction relief application involves material issues of disputed fact which cannot be resolved by reference to the existing record an evidentiary hearing should be held. See State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). We do not mean to suggest that a post-conviction relief applicant is entitled to a plenary hearing in every case in which an issue of fact is asserted. A trial court judge, of course, after considering the papers submitted in support of and in opposition to the application, has the discretion to evaluate an issue as lacking adequate factual or legal merit. Ibid. Nevertheless, where a prima facie showing of fact-issue genuineness is made, an evidentiary proceeding is indicated. Id. at 462-63, 609 A.2d 1280. Where the real issues of fact presented involve events that occurred off the record, that is one good indication the matter cannot be adjudicated on the papers alone.
Applying these concepts to the instant matter, we conclude that a plenary hearing should have been held on the one ineffective assistance of counsel issue relating to whether a plea offer had been communicated to defendant by her trial attorney and whether defendant was adequately counselled with respect thereto. We remand for that purpose alone, in order that the trial court may have an adequate record based upon full testimony and appropriate cross-examination *678 upon which to base new findings on the issue.
Reversed and remanded.