NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0629-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

LIONEL D. BROWN, a/k/a DAVID
STYLES, a/k/a LIONEL BROWN, JR.,
a/k/a LYNEL BROWN, a/k/a KEVIN L.
COOPER,

 Defendant-Appellant.
___________________________________

 Submitted January 18, 2017 – Decided October 10, 2017

 Before Judges Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Atlantic County,
 Indictment No. 09-08-0689.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Charles P. Savoth, III,
 Designated Counsel, on the brief).

 Diane M. Ruberton, Acting Atlantic County
 Prosecutor, attorney for respondent (Mario C.
 Formica, Special Deputy Attorney General/
 Acting Chief Assistant Prosecutor, of counsel
 and on the brief).

 The opinion of the court was delivered by

OSTRER, J.A.D.
 Charged with murder and weapons offenses, Lionel Brown

pleaded guilty to aggravated manslaughter of an alleged gang

member. In accord with his plea agreement, he received a twenty-

year sentence, subject to the No Early Release Act, N.J.S.A. 2C:43-

7.2, which we affirmed in an excessive sentencing appeal. Brown

later sought post-conviction relief, contending his attorney was

ineffective in various ways. Of interest to us on appeal is his

claim his attorney failed to move to suppress two custodial

statements based on Brown's assertion of his right to remain

silent.

 The PCR court denied the petition without an evidentiary

hearing. Lacking the benefit of the recordings or a transcript,

and presented only with vague claims of ineffective assistance,

the trial court's decision is unassailable. However, appellate

counsel has presented us with the recordings, and we ordered

preparation of a transcript. On the basis of that expanded record,

we are constrained to reverse and remand for an evidentiary

hearing.

 The record reflects that police questioned Brown for about

eleven hours on one day, and resumed questioning two days later.

About six hours into the first interview, Brown had made no

incriminating statements. The focus shifted to his family.

Detectives asserted the family would be safe from gang retaliation

 2 A-0629-14T3
if Brown confessed. Brown was visibly upset and despondent. He

stated he was not going to see his family as a result of his

arrest. In this context, Brown said he was done talking and wanted

to be taken to the jail. "I want to go to the County [jail] now,

man," he said. The police persisted in questioning him and

speaking about his family. Brown said, "I don't even wanna talk

about this shit no more, man. It's over. It's over." Police

continued, and Brown said, "Might as well just take me to the

County and get this shit over with." The police still continued

questioning. Defendant indicated that he would say nothing further

until he spoke with his family. Questioning ceased but, in making

arrangements to get his family to the police station, the detective

persisted "you want all four of your sisters cause you want to be

able to look them in the eye and straighten things out?"

Eventually, after Brown conferred with family members, he stated

that, while under the influence of PCP, he grabbed the victim's

gun in the midst of an altercation, shot him as he tried to run,

and then discarded the weapon.

 In the second session two days later, police followed up on

Brown's admissions, and elicited additional details related to the

shooting, including where he discarded his jacket and stashed the

weapon before discarding it. At his plea hearing, Brown stated

 3 A-0629-14T3
that he shot twice at the victim as he walked away, but did not

intend to kill him.

 In his pro se petition, Brown contended that his trial

attorney was ineffective because he did not move to suppress his

custodial statements, and had he done so, Brown would have

proceeded to trial.1 However, Brown's PCR counsel did not present

the PCR court with the recordings or transcripts of the

interrogation, nor did he present the court with other evidence

showing Brown's requests to stop. Lacking such evidence, the

court was unpersuaded Brown adequately showed a violation of his

right to remain silent.

 As did the trial court, see State v. Harris, 181 N.J. 391,

421 (2004) (stating appellate court conducts de novo review where

PCR court does not hold an evidentiary hearing), cert. denied, 545

U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005), we apply the

two-pronged Strickland test and determine whether the record — now

expanded — reveals that Brown's plea counsel was ineffective, and

that Brown suffered resulting prejudice. See Strickland v.

Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984);

1
 He also faulted his attorney for not filing other pre-trial
motions, and investigating grounds for a passion-provocation
defense. Those claims are not before us, although Brown also
contended that but for those attorney failures, he would have gone
to trial.

 4 A-0629-14T3
State v. Fritz, 105 N.J. 42, 58 (1987). Where the claimed

ineffectiveness involves an unfiled motion, the petitioner must

demonstrate the motion would have succeeded. See State v. O'Neal,

190 N.J. 601, 619 (2007). Prejudice in a guilty plea case consists

of showing "a reasonable probability that, but for counsel's

errors, [the defendant] would not have pleaded guilty and would

have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52,

59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985). Also, "a

petitioner must convince the court that a decision to reject a

plea bargain would have been rational under the circumstances."

Padilla v. Kentucky, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485, 176

L. Ed. 2d 284, 297 (2010).

 We conclude Brown has established a prima facie case of

ineffective assistance of counsel warranting an evidentiary

hearing. Brown's appellate PCR counsel asserts that Brown's

assigned PCR counsel before the trial court did not possess the

recordings of defendant's interrogation in his file. Notably, he

referred only to police reports of the interrogation. This

certainly raises a question whether plea counsel similarly failed

to obtain or review the recordings. A motion to suppress

defendant's custodial statements would likely have succeeded,

because police did not honor Brown's repeated requests to terminate

the questioning.

 5 A-0629-14T3
 "Once warnings have been given, the subsequent procedure is

clear. If the individual indicates in any manner, at any time

prior to or during questioning, that he [or she] wishes to remain

silent, the interrogation must cease." Miranda v. Arizona, 384

U.S. 436, 473-74, 86 S. Ct. 1602, 1627, 16 L. Ed. 2d 694, 723

(1966). After it is invoked, the defendant's right to remain

silent must be "scrupulously honored." State v. Johnson, 120 N.J.

263, 282 (1990) (internal quotation marks and citation omitted).

"[A]ny statement taken after the [defendant] invokes his [or her]

privilege cannot be other than the product of compulsion, subtle

or otherwise." Miranda, supra, 384 U.S. at 474, 86 S. Ct. at

1628, 16 L. Ed. 2d at 723.

 "[A] request to terminate an interrogation must be honored

however ambiguous." State v. Bey, 112 N.J. 45, 64-65 (1988)

(internal quotation marks and citation omitted). A defendant is

"not required to express his [or her] desire with the utmost of

legal precision." Id. at 65. Furthermore, if a "defendant's

conduct and remarks are . . . equivocal, and the police [are]

reasonably . . . unsure of [the] defendant's wishes," they may ask

the defendant "narrowly restricted" questions "to [clarify] the

meaning of his [or her] statements." Id. at 65, n.10. However,

the police may not respond to an unambiguous request to remain

silent with questions designed "to keep the suspect talking, not

 6 A-0629-14T3
to uphold his right to remain silent." Johnson, supra, 120 N.J.

at 283 (internal quotation marks and citation omitted). Such

follow-up questioning "constitute[s] unlawful interrogation, not

permissible clarification." Ibid.

 The State bears the burden of proving beyond a reasonable

doubt that it abided by Miranda, and that any confession was

voluntary and uncoerced. State v. Yohnson, 204 N.J. 43, 59 (2010).

Had Brown's counsel moved to suppress his confession, the State

would have been unable to meet that burden, based on the record

before us.

 Brown unambiguously asked that questioning stop, and he be

taken to the county jail. In State v. S.S., 229 N.J. 360, 383-84

(2017), the Court noted that a suspect who states he has nothing

else to say has invoked his right to remain silent. That is just

what Brown did when he repeatedly asked to be taken to the jail,

and said, "I don't even wanna talk about this shit no more, man.

It's over. It's over."

 The State's contention that defendant was simply upset and

did not want to stop talking is belied by the officer's response,

"I know that you want to go to the County and I understand that."

Rather than accede to Brown's unambiguous request, the officer

asked, "I need to ask you why, why do you want to just want to go

 7 A-0629-14T3
to the County? Why?" Those questions were obviously designed to

keep Brown talking after he said he wanted to stop.2

 Although Brown willingly spoke to the officers two days later,

the questioning was the fruit of the poisonous tree and would have

been suppressed had trial counsel filed a timely motion. "[W]here

the second confession is so intertwined with the first, it

inevitably must be seen as the product of the first and thus wholly

tainted by the preceding constitutional violation." Johnson,

supra, 120 N.J. at 286-87. Here, police predicated their questions

in the second interrogation on the disclosures in the first; the

same officers participated; and it occurred relatively close in

time.

 We also reject the notion that the failure to file a

suppression motion was a strategic move entitled to our deference,

as it was apparently uninformed by a careful review of the

interrogation record. See Strickland, 466 U.S. at 690-91, 104 S.

Ct. at 2066, 80 L. Ed. 2d at 695 ("strategic choices made after

less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the

2
 Brown's request apparently arose out of his resignation to the
idea that his family would spurn him and allies of the victim
would retaliate. However, this does not negate his repeated
requests to stop talking and go to the jail. Defendant's
motivation is of no moment.

 8 A-0629-14T3
limitations on investigation"); see also State v. Arthur, 184 N.J.

307, 342 (2005).

 Therefore, we conclude that plea counsel's failure to file a

suppression motion constitutes deficient performance that

satisfies the first Strickland prong.3

 The remaining issue is whether Brown was prejudiced. In

other words, would Brown have insisted upon going to trial, and

would it have been rational for him to do so? Brown contends he

would have gone to trial, even though he would have risked

conviction of murder and a life sentence. His credibility should

be assessed not on the paper record before us, but in an

evidentiary hearing. See State v. Pyatt, 316 N.J. Super. 46, 51

(App. Div. 1998) (noting credibility determinations "are best made

through an evidentiary proceeding with all of its explorative

benefits"), certif. denied, 158 N.J. 72 (1999).4

3
 As we conclude that Brown's confession would have been suppressed
because he exercised his right to terminate the interrogation, we
need not reach his additional claims that his will was overborne
by the nature and length of the questioning, alleged threats to
his family, and coercive promises to him.
4
 Notably, Brown asserted, in his pro se petition, that he would
have gone to trial but for trial counsel's ineffectiveness in
multiple ways. However, only one now remains in the case — the
failure to move to suppress the confession. On remand, the court
should consider whether Brown would have proceeded to trial but
for that sole instance of ineffectiveness.

 9 A-0629-14T3
 The State contends it possessed substantial proof of Brown's

guilt, separate from his custodial statements, which would have

made it irrational and implausible for Brown to go to trial and

face the attendant risks, rather than accept the plea agreement.

The State argues the police had witnesses willing to testify they

saw Brown near the scene of the homicide, and that Brown had prior

conflicts with the victim. Police also found physical evidence

they said tied Brown to the scene.

 However, the record does not permit us to assess the strengths

of the State's proofs at the time Brown entered his plea,

including, for example, the credibility of such witnesses and the

likelihood they would testify. Nor can we weigh such evidence

against the other discovery in the case. The State's claims at

most create an issue worthy of an evidentiary hearing.

 Considering the facts in a light most favorable to Brown, as

we must, State v. Preciose, 129 N.J. 451, 462-63 (1992), Brown has

presented a prima facie claim by showing (1) his trial attorney's

performance was deficient by failing to file a motion to suppress

his statement following invocation of his right to remain silent,

and (2) he suffered prejudice because it would have been rational

for him to reject the plea bargain and go to trial. Therefore,

he is entitled to an evidentiary hearing to determine whether he

in fact suffered the requisite prejudice. See id. at 462 (stating

 10 A-0629-14T3
that an evidentiary hearing should be held where a defendant has

made a prima facie showing in support of PCR).

 Reversed and remanded for an evidentiary hearing.

 11 A-0629-14T3