**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5383-16T2

MATTHEW W. CROSSKEN,

      Plaintiff-Respondent,

v.

JULI R. CROSSKEN,

      Defendant-Appellant.

_____

      Submitted July 9, 2018 — Decided July 30, 2018

      Before Judges Yannotti and Haas.

      On appeal from Superior Court of New Jersey,
      Chancery Division, Family Part, Ocean County,
      Docket No. FM-15-0827-15.

      Gary L. Goldberg, attorney for appellant.

      Law Office of Timothy F. McGoughran, attorney
      for respondent (Timothy F. McGoughran and
      Sarah Martynowski, on the brief).

PER CURIAM

     In this post-judgment matrimonial matter, defendant appeals from the Family Part's June 23, 2017 order, which denied her motion to enforce two equitable distribution provisions contained in the parties' property settlement agreement (PSA). We are constrained

to reverse and remand because the trial judge did not conduct a plenary hearing to resolve the parties' sharply conflicting factual assertions regarding these two provisions and the representations each made to the other during the negotiation of the PSA.

The parties were married in November 2002 and divorced in September 2016. They incorporated their PSA into their final judgment of divorce.

Paragraph 11.4 of the PSA stated that the parties would distribute plaintiff's IRA in the following manner:

> [Plaintiff] maintains an interest in an IRA in the amount of $77,000 of which approximately $40,000 is premarital. Based upon the overall terms of this agreement[,] the parties shall divide this asset equally by a roll over of 50% of the account as of the date of distribution to [defendant] via a QDRO or other mechanism to insure this is a tax free transfer. From [plaintiff's] 50%[,] he agrees to pay [defendant] $11,000[] as and for the QDRO and E.D. via tax free roll over.

At the time of their divorce, plaintiff also owned a 50% interest in two properties in the Poconos. Both properties had been listed for sale. Paragraph 11.5 of the PSA stated that when the properties were sold, defendant would receive 100% of the net proceeds received by plaintiff.

In May 2017, defendant filed a motion to enforce both of these provisions, together with a supporting certification. With

regard to plaintiff's IRA, defendant stated that Paragraph 11.4 of the PSA required plaintiff to pay her 50% of the value of the account as of the date of its distribution. Defendant asserted that plaintiff had refused to obtain a valuation of the IRA or roll over her half of the asset.

In response, plaintiff filed a competing certification. He asserted that he was entitled to receive $40,000 from the monies in the IRA before any distribution occurred because the PSA identified that amount as a "premarital." Thus, plaintiff argued that defendant should only receive half of whatever remained, rather than half of the value of the account as of the date of its distribution.

Turning to the two properties in the Poconos, defendant certified that plaintiff misrepresented the value of these assets to her during the parties' negotiation of the PSA. She claimed that both properties were listed for sale for $50,000 each. However, the day before the parties divorced, and without notice to her, plaintiff reduced the asking price for each lot to $15,000. He later sold the properties for a total of $28,000, which meant that defendant's 50% share would be $14,000 before maintenance and

closing costs were subtracted,[1] rather than the $50,000 she stated she had expected based upon plaintiff's representations leading up to the execution of the PSA.

Plaintiff took a contradictory position in his certification in opposition to defendant's motion. While acknowledging that the asking price for each lot had been set at $50,000 throughout the parties' negotiation of the PSA, he bluntly stated "that was a pipe dream." Plaintiff asserted he never told defendant that she would receive that amount. Plaintiff further alleged that defendant should have known the listing price for the lots was overstated because, in his Case Information Statement, he had earlier stated that the value of his share of the lots was only $3005. Plaintiff claimed he followed the realtor's advice and got the most he could for the properties.

The trial judge did not conduct a plenary hearing in order to evaluate the parties' competing factual allegations or to evaluate their credibility. Instead, he denied defendant's enforcement motion after oral argument, and issued a brief written statement of reasons.

---

[1] Plaintiff estimated these costs to be $6,000 and, therefore, defendant would receive approximately $8,000 from the sale of the two properties.

A-5383-16T2

Addressing the distribution of plaintiff's IRA, the judge acknowledged that Paragraph 11.4 of the PSA "lack[ed] a certain degree of express clarity[.]" However, the judge determined that because this provision mentioned that "approximately $40,000" of this asset "is premarital[,]" the parties must have intended to exclude this imprecise amount from equitable distribution. However, the judge did not explain why Paragraph 11.4 went on to state that "[b]ased on the overall terms of this agreement[,]" defendant was entitled to "50% as of the date of distribution[,]" which could plausibly encompass all of the monies in the IRA on that date, including the $40,000 plaintiff sought to keep for himself.

The judge also rejected defendant's claim that plaintiff misrepresented the value of the two lots in the Poconos during the parties' negotiation of the PSA. In so ruling, the judge noted that the PSA did not specify "a minimum amount or any anticipated value for which the property would be sold[,]" and then merely stated that he found no "misrepresentation or fraud by" plaintiff. This appeal followed.

On appeal, defendant argues that the judge erred by denying her request to enforce Paragraphs 11.4 and 11.5 of the PSA. For the reasons that follow, we reverse and remand for a plenary hearing.

We normally owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

However, we owe no special deference to the judge's legal conclusions. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Interpretation and construction of a contract, such as the PSA in this case, is a question of law for the trial court, subject to de novo review on appeal. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998); Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (reviewing the enforcement of a settlement agreement de novo).

After reviewing the record in light of these principles, we reverse and remand the trial judge's decision because he did not conduct a plenary hearing concerning the proper interpretation of the two disputed paragraphs of the PSA.

A-5383-16T2

When determining the meaning of a matrimonial agreement, such as a consent order, courts apply the "basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). Courts usually enforce contracts as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

However, when a contract is ambiguous in a material respect, the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence. Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 268-70 (2006). A contract is ambiguous if its terms are "susceptible to at least two reasonable alternative interpretations." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992)).

In attempting to resolve ambiguities in a document, courts may consider extrinsic evidence. While such evidence should never be permitted to modify or curtail the terms of an agreement, a court may "consider all of the relevant evidence that will assist in determining the intent and meaning of the contract." Conway, 187 N.J. at 269. As the Court explained in Conway,

> [e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when

the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance.

[Ibid. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301-02 (1953)).]

Here, the parties disputed the meaning of both of the contested provisions of the PSA, as well as the nature of their pre-divorce negotiations. On the one hand, defendant certified that she understood Paragraph 11.4 to mean that she would receive half of the entire amount in plaintiff's IRA as of the date of distribution. She also asserted that plaintiff misled her as to the value of the two properties in the Poconos, and then improperly sold them for a reduced price without her knowledge or consent.

On the other hand, plaintiff certified that the parties noted that approximately $40,000 of the $77,000 in the IRA was premarital because they recognized he was entitled to retain those funds for himself. Plaintiff also claimed defendant knew all along that the properties were not worth a total of $50,000 and, during the parties' negotiation of Paragraph 11.5, he did not guarantee she

would receive that amount, or any other, when the properties were sold.

Under these circumstances, the trial judge should have conducted a plenary hearing. "[I]n a variety of contexts, courts have opined on the impermissibility of deciding contested issues of fact on the basis of conflicting affidavits and certifications alone." State v. Pyatt, 316 N.J. Super. 46, 50 (App. Div. 1998) (citations omitted). In particular, where the parties' pleadings raise issues of fact or require credibility determinations, relief cannot be denied absent a plenary hearing. Whitfield v. Whitfield, 315 N.J. Super. 1, 12 (App. Div. 1998). Here, the parties filed conflicting certifications concerning their intent, and the appropriate interpretation of Paragraphs 11.4 and 11.5 of the PSA, which required a plenary hearing to resolve. Therefore, we reverse the June 23, 2017 order, and remand for a plenary hearing.

Reversed and remanded for a plenary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5383-16T2