**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5051-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL A. KINSELLA,

     Defendant-Appellant.

_____

Submitted October 30, 2019 – Decided January 8, 2020

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 15-02-0113.

Joseph E. Krakora, Public Defender, attorney for appellant (Dianne Glenn, Designated Counsel, on the brief).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Tiffany M. Russo, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Michael Kinsella appeals from the May 3, 2018 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We reverse and remand for an evidentiary hearing.

On September 9, 2014, defendant entered a Morristown gas station and pressed a box cutter against the clerk's stomach. He took eighty-five dollars and left the gas station. Defendant argues he was drug-addicted and "dope sick" at the time of the offense. Defendant was arrested shortly thereafter and admitted to police that he committed the robbery.

The State offered defendant a pre-indictment plea, where if defendant pled guilty to a first-degree crime, the State would recommend a sentence in the second-degree range of five to seven years, subject to the No Early Release Act (NERA). N.J.S.A. 2C:43-7.2 While defendant's attorney stated at the sentencing hearing that "[defendant] decided he was not going to accept that offer pre-indictment . . . to wait and see whether he would be eligible for the Morris County Drug Court Program (Drug Court)," defendant asserts he rejected this plea based on his attorney's advice to do so because she could get him into Drug Court. In his certification for PCR, defendant states:

> 1. Initially, my plea attorney told me the State offered me a plea of [five] years in state prison, subject to NERA, as I would be sentenced in the second-degree range. However, plea counsel told me to reject that

offer because she could get me into Drug Court, due to my drug addiction.

2. I rejected the [five] year state prison term, subject to NERA, based on my lawyer's representation that she could get me into Drug Court and get me help for my addiction.

However, defendant was legally barred from Drug Court because he was charged with a first-degree crime. Defendant was then indicted on count one, first-degree robbery, N.J.S.A. 2C:15-1(a)(2); count two, third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and count three, fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). After the indictment, the State offered a second plea, but this time for a sentence of ten years, which was at the low end of the first-degree range, subject to NERA. In his PCR certification, defendant asserts when he learned he "was [never] Drug Court eligible and then . . . asked to take the initial plea, [my attorney] told me it was now [ten] years in [s]tate prison, subject to NERA."

Defendant accepted the second plea, pleading guilty to first-degree robbery, which carried a maximum sentence of twenty years in state prison, in return for dismissal of counts two and three and a recommended sentence of ten years subject to NERA. The plea form stated that his attorney would argue for a sentence in the second-degree range. However, before accepting defendant's

plea, the trial judge told defendant that although defendant's attorney had reserved the right to argue for a sentence in the second-degree range, "as we sit here today . . . there are absolutely no guarantees or promises of any sort or any variety that that's going to happen. Do you understand that?" To which defendant responded "[y]es." The trial judge further explained that it "would ultimately be up to [t]he [c]ourt in the exercise of its discretion under the sentencing statutes to determine whether or not that application should be granted or rejected." Defendant stated that he understood, and indicated he was willing to take that risk.

Further, the trial judge informed defendant that, just as he was not bound by defense counsel's argument for a sentence in the second-degree range, neither was he "bound by any promises or recommendations of the State," and that he had "the right to reject the plea before imposing sentence on [defendant] and the right to impose a more severe sentence." The trial judge then told defendant that if the sentence imposed was more severe than that which the State recommended, defendant could withdraw his guilty plea.

Defendant answered in the affirmative when the trial judge asked him if he had enough time to speak with his attorney, if his attorney advised him of all the charges, discovery, evidence, and potential consequences of entering a guilty

plea, if his attorney answered all of his questions to his satisfaction, and if he was satisfied with his attorney's services in general. Defendant indicated he did not have any questions for either his attorney or the court.

After the factual basis was presented for the plea, the trial judge again asked defendant if he understood what he was doing in pleading guilty, if he was "entering this guilty plea freely, knowingly, intelligently and voluntarily," and told defendant that once he accepted that plea it would be "extraordinarily difficult" for defendant to try to withdraw it, all of which defendant indicated he understood. When asked if he needed more time to think about the plea or talk to his attorney, defendant responded "I want [t]he [c]ourt to accept my guilty plea," and answered in the affirmative when the judge asked if he was "absolutely certain."

At the sentencing hearing, the trial judge asked defendant's attorney if defendant had applied to Drug Court, to which she replied

> [t]hat was the hope, [j]udge. That was one of the reasons why [defendant] did reject the pre-indictment offer, because unfortunately with the [p]rosecutor's [o]ffice I was not able to get him accepted into the Drug Court [p]rogram. I do think that if he would have been able to plead to a second-degree offense there is nothing on his court history that would have barred him from . . . Drug Court, and I do think he would have been found to be drug-depend[e]nt at the time of the offense. Clearly there's a substance abuse history here, as

5

indicated in the pre-sentence report. So I do think he would have been eligible for [D]rug [C]ourt . . . .

Judge, I do know that [someone] did visit [defendant] at the jail indicating that he was clinically acceptable for a Drug Court [p]rogram, but he's just not legally acceptable based on the offense.

Defendant then-apologized to the trial judge, and explained that

[b]ecause of my drug abuse I did not accept the first offer of a five with an [eighty-five] or a seven with [eighty-five], hoping for Drug Court, for I didn't know how bad[] this crime truly was. I didn't know Drug Court didn't accept violent crimes . . . . Drug Court is something I wanted for myself. I wanted to be sober.

Although defendant's attorney argued thoroughly and zealously for a second-degree sentence, the trial judge did not find he had the discretion to give a lower sentence than the State recommended, based on the nature of the charge and the fact that defendant was already on probation for burglary when he committed the offense. The trial judge then sentenced defendant to ten years subject to NERA, in accordance with the plea agreement. Defendant filed a direct appeal challenging the length of his sentence, which we affirmed.

Defendant filed a PCR petition November 16, 2017, based on ineffective assistance of counsel, arguing that but for his attorney's advice to reject the plea because she could get him into Drug Court, he would have taken the first plea and would have received a sentence in the second-degree range. Defendant also

asked for an evidentiary hearing, as the facts and circumstances surrounding the plea negotiations and his communications with his attorney are not contained in the record. The PCR judge denied defendant's petition and found defendant did not set forth a prima facie case to warrant an evidentiary hearing.

This appeal followed. Defendant raises the following issue on appeal:

> POINT I:
> THE PCR COURT'S DENIAL OF THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF AND AN EVIDENTIARY HEARING DEPRIVED DEFENDANT OF A FULL AND FAIR OPPORTUNITY TO PRESENT THE MERITS OF HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM; DEFENDANT'S ALLEGATIONS WERE OUTSIDE THE TRIAL RECORD AND COULD ONLY BE FULLY DEVELOPED UPON THE GRANTING OF AN EVIDENTIARY HEARING.

Where a judge denies a PCR petition without an evidentiary hearing, we review the denial for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). Further, where no evidentiary hearing was conducted, "we may review the factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We also review de novo the trial court's conclusions of law. Ibid. (citation omitted).

7

Defendant argues he was prejudiced by ineffective assistance of counsel on two grounds: 1) that he would not have rejected the State's first plea offer but for counsel's advice to do so because she could get him into Drug Court, which resulted in a longer sentence, and 2) that counsel did not negotiate for a downgrade to a second-degree offense, which would have enabled defendant's acceptance into Drug Court rather than the state prison sentence he did receive. Defendant asserts this establishes a prima facie case of ineffective assistance of counsel, and that he is entitled to an evidentiary hearing since the facts at issue – whether counsel told defendant to reject the first plea because she could get him into Drug Court, and whether she attempted to negotiate a second-degree plea – are subject to attorney-client privilege and are therefore not in the record.

Rule 3:22-2(a) states that PCR "is cognizable if based upon . . . [s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." The Sixth Amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution both guarantee effective assistance of legal defense counsel to a person accused of a crime. See State v. Porter, 216 N.J. 343, 352 (2013) (citing Strickland v. Washington, 466 U.S. 668, 685-86 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)).

Generally, a defendant must seek relief through a direct appeal under Rule 3:22-3 and "may not use [PCR] to assert a new claim that could have been raised on direct appeal." State v. McQuaid, 147 N.J. 464, 483 (1997); see also Rule 3:22-4. However, a defendant may use PCR "to challenge . . . [a] final judgment of conviction which could not have been raised on direct appeal." Id. at 482. See also In re Santiago, 104 N.J. Super. 110, 115 (Law Div. 1968). Petitioners are "rarely barred from raising ineffective-assistance-of-counsel claims on [PCR]" under New Jersey case law. State v. Preciose, 129 N.J. 451, 459-60 (1992). Further, "[o]ur courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Id. at 460. Here, defendant asserts a constitutional claim of ineffective assistance of counsel, which is cognizable under Rule 3:22-2(a), and the claim could not have been raised on direct appeal as it relates to activities off the record and subject to attorney-client privilege.

A defendant is only entitled to an evidentiary hearing in a PCR petition if 1) the defendant establishes a prima facie case in support of PCR, 2) the court determines there are "material issues of disputed fact that cannot be resolved by

reference to the existing record," and 3) it is determined an evidentiary hearing is required to resolve the claims for relief. See R. 3.22-10(b).

In determining whether a defendant has established a prima facie claim, the facts should be viewed in the light most favorable to the defendant. Preciose, 129 N.J. at 462-63. To determine whether a prima facie claim of ineffective assistance of counsel is present, the claim must be evaluated under the two-prong Strickland test, where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,' and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694) (internal citation omitted).

A defendant may satisfy the first prong of the Strickland test "by a showing that counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314). Because no "'particular set of detailed rules'" for an attorney's conduct can encompass the "'variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant' . . . there is 'a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.'" Castagna, 187 N.J. at 314 (quoting Strickland, 466 U.S. at 688-89). "To rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" Ibid. at 314 (quoting Strickland, 466 U.S. at 689). Further, the "totality of counsel's performance in the context of the State's evidence of defendant's guilt" must be considered when assessing the quality of counsel's performance. Ibid. (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

When evaluating a claim of ineffective assistance of counsel, we do not second-guess defense counsel's tactical decisions, or view those decisions under the "distorting effects of hindsight." Marshall, 148 N.J. at 157 (quoting Strickland, 466 U.S. at 689). "Objectively reasonable, albeit debatable or unsuccessful strategic decisions, by counsel are within the range of adequate representation." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3:22-2 (2019) (citing State v. Arthur, 184 N.J. 307, 319 (2005)).

We have found that an attorney's misadvice to a defendant regarding incarceration exposure, which then leads to a rejection of a plea, to be ineffective assistance of counsel. See State v. Taccetta, 351 N.J. Super. 196 (App. Div. 2002). In Taccetta, we held "an attorney's gross misadvice of sentencing exposure that prevents defendant from making a fair evaluation of a plea offer and induces him to

reject a plea agreement he otherwise would likely have accepted constitutes remediable ineffective assistance." Id. at 200 (citations omitted).

Here, defendant asserts his attorney advised him to reject the first, pre-indictment plea – for a first-degree charge but a second-degree sentence – because she could get him into Drug Court. If defendant's attorney did indeed advise him to reject the first plea because she could get him into Drug Court, it would fall below the objective standard of reasonableness, as defendant was at all times during this process legally barred from Drug Court by his first-degree charge. Further, as the PCR judge noted, admission into Drug Court is completely out of a defense attorney's control, as the State decides the charge, and even where the State agrees to a Drug-Court-acceptable charge, the trial judge ultimately must accept a Drug Court sentence.

Looking at the facts in the light most favorable to defendant, it can be inferred that defendant's attorney was indeed hoping to get him into Drug Court for treatment, despite the first-degree charge, as she stated Drug Court "was the hope" and she thought defendant would be eligible but for the first-degree charge. Further, although defendant's attorney stated it was defendant who wanted to reject the first offer and "he wanted to wait and see whether he would be eligible for . . . Drug Court . . . which is what defendant wanted," there is nothing in the record to show that she

discouraged him from this or told him he was legally barred with the first-degree charge. In fact, defendant stated at the end of his sentencing hearing that he "didn't know Drug Court didn't accept violent crimes." It can also be inferred from the record, looking at the facts in the light most favorable to defendant, that defendant's attorney may have been negotiating with the State for a second-degree plea, as evidenced by her statement that "with the [p]rosecutor's [o]ffice I was not able to get him accepted into the Drug Court [p]rogram. I do think that if he would have been able to plead to a second-degree offense there is nothing on his court history that would have barred him from . . . Drug Court."

As the PCR judge noted, it was a general policy that incarceration exposure would escalate as the trial and plea negotiations moved forward. Although defendant's attorney indicated that was not her experience in other counties, the State did reference that defendant's attorney was "aware, because there were numerous correspondence made in this case, the offer was going to go up . . . if and when motions were litigated in this case." Although it is not clear from the record the timing of the referenced correspondence, if it occurred before defendant rejected the first plea, defendant's advice to reject the first plea because she could get him into Drug Court would not be an "[o]bjectively reasonable, albeit debatable or

13

unsuccessful strategic decision[]. . . within the range of adequate representation." Pressler & Verniero, cmt. 1.1 on R. 3:22-2. (citation omitted).

Therefore, if defendant's attorney did indeed tell defendant to reject the first plea because she could get him into Drug Court – or even if she told him anything other than there was only a very small chance or that it was not likely he would get into Drug Court or get a second-degree offense plea – it was not a reasonable assessment and likely "prevent[ed] defendant from making a fair evaluation of a plea offer and induce[d] him to reject a plea agreement he otherwise would likely have accepted," which under Taccetta constitutes ineffective assistance of counsel. 351 N.J. Super. at 200.

To establish the second prong under the Strickland test, a defendant must show there is a "reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Castagna, 187 N.J. at 314 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

To establish prejudice under the second prong of Strickland in a plea context, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163

14

(2012). The question of whether counsel's ineffectiveness undermined "the proper functioning of the adversarial process" such that it cannot be certain there was a "just result" in a plea context is a question not of "the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance." Id. at 169 (citation omitted).

Where an attorney's advice leads a defendant to reject a plea offer to his or her detriment, the defendant must show there is a reasonable probability that the plea offer

> [(1)]would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [(2)] that the court would have accepted its terms, and [(3)] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.
>
> [Id. at 163-64.]

Firstly, as to whether there was a reasonable probability that the plea offer would have been presented to the court — that defendant would have accepted the plea but for his attorney's advice and the prosecutor would not have withdrawn it due to intervening circumstances, — viewing the facts in the light most favorable to defendant it does appear there is a reasonable probability the

first plea would have been presented to the court. This is evidenced in that defendant took the very first plea that was offered after he found out he could not get into Drug Court, even though his attorney stated in the sentencing hearing that "I really do not think it is a very good plea." Further, defendant did not seem to want to go to trial, as his attorney stated she had presented legal defenses he could have used at trial but that defendant "chose not to go that route . . . he wanted to take responsibility." Additionally, defendant never asserted his innocence at any point, cooperated fully with police when apprehended, and confessed to the crime. Therefore, there is a reasonable probability that defendant would have taken the first plea if his attorney had not advised him to reject it or told him she could get him into Drug Court. As to whether the State would have withdrawn the plea, there is no indication on the record that would have happened – the State only indicated the incarceration exposure would escalate as the case progressed.

Secondly, as to whether the trial court would have accepted the terms, viewing the facts in the light most favorable to defendant it does appear the court would have accepted the State's offer of a first-degree charge with a sentence in the second-degree range. While the trial judge did note the seriousness of the crime, that the crime was clearly a first-degree crime, and that he had no

16

discretion to downgrade the sentence to the second-degree range, there is also an indication that the trial judge gave great weight to the State's recommendations. When discussing the State's sentence recommendation, the trial judge stated "I think it's implicit that the State has taken into account various factors, including the fact that the victim was not physically harmed in this case" and that he "assume[d] that the State has taken that into consideration, as well as [defendant's] records." Therefore, while the trial judge did not feel he had the discretion to downgrade the sentence from the State's recommendation, there is nothing on the record to indicate that the trial judge would have rejected a lower sentence if the State had recommended it.

Thirdly, as to whether the conviction or sentence, or both, of the rejected plea would have been less severe than the judgment that was imposed, it is clear here that defendant would have received a less severe sentence, in that he was offered a sentence in the second-degree range of either five or seven years subject to NERA, but instead was sentenced to ten years subject to NERA.

Therefore, because there is a reasonable probability that the first plea would have been presented to the court, that the court would have accepted its terms, and the sentence would have been less severe, defendant's attorney's advice to reject the first plea because she could get him into Drug Court

17

prejudiced defendant in that it "caused . . . defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance." Lafler, 566 U.S. at 169.

Looking at the facts in the light most favorable to defendant, we can infer from the record that defendant has both shown his attorney's advice fell below the objectively reasonable standard and that he was prejudiced by it, meeting both prongs under Strickland to establish a prima facie claim of ineffective assistance of counsel.

As to whether there are material facts in dispute, defendant asserts that his attorney told him to reject the plea because she could get him into Drug Court and that his attorney failed to negotiate a second-degree plea with the State. The State, on the other hand, asserts that defendant rejected the first offer as "counseled strategy," in the hope he could get a better post-indictment offer, and that the record reflects defendant rejected the State's offer for multiple reasons. Therefore, because defendant and the State dispute the reasons for defendant's rejection of the first plea, there are material facts in dispute.

As to whether an evidentiary hearing is necessary in this case, "[e]videntiary hearings are not required," but "Rule 3:22-10 provides discretion to the PCR court to grant an evidentiary hearing and take oral testimony." State

v. Jones, 219 N.J. 298, 311 (2014) (citing Preciose, 129 N.J. at 462). Claims of ineffective assistance of counsel often warrant an evidentiary hearing "because the facts often lie outside the trial record and because the attorney's testimony may be required." Porter, 216 N.J. at 354 (quoting Preciose, 129 N.J. at 462). "Therefore, once a defendant presents a prima facie claim, Rule 3:22-10(b), an evidentiary hearing should ordinarily be granted to resolve any ineffective assistance of counsel claims." Ibid. (citing Preciose, 129 N.J. at 462-63).

"Certain factual questions, 'including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney,' are critical to claims of ineffective assistance of counsel and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" Id. at 355 (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998)). Such determinations are "best made" at an evidentiary hearing, and "[e]ven a suspicious or questionable affidavit supporting a PCR petition" may not be summarily rejected, but rather must be tested for credibility. Ibid. (quoting Pyatt, 316 N.J. Super. at 51) (citation omitted).

Where the harm suffered from rejecting the plea is a longer sentence,

> the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made,

the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he [ended up with], or something in between.

[Lafler, 566 U.S. at 170-71.]

The questions raised here can only be resolved by hearing from defendant's attorney herself and examining the correspondence between defendant's attorney and the State during plea negotiations. The factual questions here, of what defendant's attorney represented to him and whether she advised him to reject the first plea, "'relate[] to the nature and content of off-the-record conferences between defendant and [defendant's] attorney' . . . and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" Porter, 216 N.J. at 355 (quoting Pyatt, 316 N.J. Super. at 51).

We reject the State's argument that defendant's claims are procedurally barred by Rule 3:22-5, as the issue was already adjudicated on the excessive-sentence direct appeal. Defendant's claim here is not that his sentence is excessive, but rather that he lost the opportunity to take the first plea, which came with a lower sentence, because of his attorney's alleged misadvice. Therefore, these particular claims have not already been adjudicated.

Reversed and remanded for a hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-5051-17T4