**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3765-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JERMAINE A. MCFADDEN,

    Defendant-Appellant.

_____

Submitted October 14, 2021 – Decided July 6, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 13-12-2252.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc R. Ruby, Designated Counsel, on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Patrick Ryan McAvaddy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jermaine McFadden pled guilty to murdering his wife, Crystal Reid, admitting that he had strangled her and stabbed her with a knife ninety-seven times. He was sentenced in accordance with a negotiated plea agreement to the minimum term of thirty years' imprisonment, with thirty-years of parole ineligibility. We affirmed his conviction and sentence on our Sentence Only Argument (SOA) calendar. See R. 2:9-11.

In this appeal from the February 13, 2020 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing, defendant raises the following points for our consideration:

POINT I

THE CRINGEWORTHY PLEA TRANSCRIPT UNEQUIVOCALLY DEMONSTRATES THE MENTALLY RETARDED [DEFENDANT] WAS DENIED CONSTITUTIONALLY[] MANDATED REPRESENTATION, WHEN HE WAS CONVICTED OF MURDER, EVEN AFTER INDICATING HIS CONDUCT FELL OUTSIDE THE CHARGE, AND HE DID NOT UNDERSTAND THE PUNITIVE CONSEQUENCES. (NOT RAISED BELOW).

   A.   Ineffective Assistance Of Counsel.

   B. [Defendant's] Mentally Retarded Status Demanded Enhanced Representation And Heightened Due Process. (Not Raised Below).

POINT II

THE CRIMINAL DIVISION ERRED IN ACCEPTING [DEFENDANT'S] GUILTY PLEA, BECAUSE HE DID NOT ADMIT CONDUCT SUFFICIENT FOR SATISFYING A MURDER CHARGE'S ESSENTIAL MENS REA ELEMENT, AND TRIAL COUNSEL WAS CONSTITUTIONALLY DEFECTIVE IN FAILING TO EXPLAIN THE PUNITIVE CONSEQUENCES FLOWING FROM AN ASSOCIATED CONVICTION. (NOT RAISED BELOW).

POINT III

TRIAL COUNSEL WAS CONSTITUTIONALLY DEFECTIVE IN FAILING TO PURSUE A COGNIZABLE INTOXICATION DEFENSE TO MURDER, BECAUSE THE MENTALLY RETARDED [DEFENDANT] WAS VISIBLY INTOXICATED AT THE TIME OF [REID'S] DEATH, PARTICULARLY AFTER [DEFENDANT] DENIED RECALLING THE CIRCUMSTANCES OF [REID'S] DEATH DURING THE PLEA COLLOQUY.

POINT IV

TRIAL COUNSEL'S TELLING THE SENTENCING COURT THAT [DEFENDANT'S] DRUG USE WAS A CONTRIBUTING FACTOR IN [REID'S] DEATH NECESSARILY NEGATES THE ESSENTIAL PURPOSEFUL OR KNOWING ELEMENT OF MURDER, AND DEMONSTRATES INEFFECTIVENESS IN NOT HAVING ASSERTED AN INTOXICATION DEFENSE PRIOR TO THE CONVICTION. (NOT RAISED BELOW).

POINT V

APPELLATE COUNSEL WAS INEFFECTIVE IN
REALIZING [DEFENDANT'S] CONVICTION WAS
VULNERABLE TO ATTACK, BUT MISSING THE
CRUCIAL DISTINCTION THAT THE [THIRTY]-
YEAR SENTENCE WAS NOT UNFITTING OF
MURDER, AND ONLY MUSTERING APPELLATE
ADVOCACY CONSISTING OF A [SIX] MINUTE
ARGUMENT AGAINST THE <u>CONVICTION</u>,
DURING A PROCEDURE BETTER SUITED FOR
REVIEWING THE <u>SENTENCE</u>.

Based on our review of the record, we reverse and remand for an evidentiary hearing on defendant's ineffective assistance of counsel (IAC) claims pertaining to trial counsel only. We intimate no views on the outcome of any future proceedings.

I.

We discern the following facts from the State's investigation of the homicide. On August 9, 2013, defendant and his wife were staying in a bedroom at the Jersey City apartment of Monique Glaster, defendant's cousin. Glaster's sister was visiting at the time. Throughout the night, Glaster and her sister saw defendant come out of the bedroom several times. Glaster noticed defendant "was very intoxicated . . . and was swaying back and forth when he walked."

At some point before 11 p.m., defendant came out of the bedroom and "asked [Glaster] for a drink." Defendant returned to the bedroom with a beer,

4

but emerged again a short time later, "shirtless with sweatpants hanging off [of] his waist." Defendant sat on Glaster's bed and told her and her sister, "I think I did something bad"; "I did something crazy." When the sisters asked what he meant, defendant said he "would tell [them] later," and returned to his bedroom.

Shortly thereafter, defendant telephoned his sister, Shaunta Washington, and told her, "I just did some bullshit." When Washington asked what defendant was "talking about," he responded he "just killed [Reid]." Washington asked how it happened, and defendant replied, "I choked her, and then I stabbed her up." After ascertaining his whereabouts, Washington told defendant she was "on [her] way."

While Washington and defendant were on the phone, Glaster overheard defendant say he was at "Monique's house." Concerned that defendant was inviting people to her apartment in his intoxicated state, Glaster grabbed the phone from defendant and talked to Washington. Washington informed Glaster that defendant had told her that "he did something to some girl in the room."

Glaster promptly went into the bedroom where defendant and Reid were staying and saw Reid's "naked and lifeless body lying face up on the bed." Glaster observed multiple "holes" in Reid's stomach and a knife from her kitchen alongside the mattress. When Glaster's sister asked defendant what he did to

5

Reid, defendant replied he "didn't do anything" and attempted to leave the apartment. The sisters tussled with defendant to prevent him from leaving, while Glaster called the police.

After police and paramedics arrived, Reid was pronounced dead at 11:53 p.m. An autopsy later revealed that Reid died from strangulation and "[sixteen] stab wounds in the chest area, [fifty-seven] stab wounds [to her] abdomen . . . , [fourteen] stab wounds [to her] left [side,] and [ten] stab wounds [to her] right [side]."

On November 12, 2013, defendant was charged in a Hudson County indictment with murder, N.J.S.A. 2C:11-3(a)(1), (2) (count one); third-degree possession of a weapon, a knife, for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); and fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count three). On February 8, 2016, defendant entered a guilty plea to the murder charge pursuant to a plea agreement under which the State would recommend the minimum sentence for murder, see N.J.S.A. 2C:11-3(b)(1), and move to dismiss the remaining counts of the indictment at sentencing.

During the plea colloquy, the trial court questioned defendant regarding his understanding of the plea agreement and the consequences of his plea. The judge asked defendant whether he "discuss[ed] th[e] case, its facts and

6

circumstances, as well as [his] [r]ights and any defenses that [he] may have to th[e] charge with [his] lawyer before deciding to plead guilty." Defendant responded in the affirmative. Next, the judge asked whether defendant understood that if the court accepted his guilty plea, the judge would "be required to impose a sentence of [thirty] years . . . without eligibility for [p]arole." Defendant replied that he understood.

The judge then asked defendant if he understood "that the No Early Release Act [(NERA)[1]] that applie[d] to [his] sentence w[ould] require that upon [defendant's] discharge from custody," defendant would "undergo five years of [p]arole [s]upervision." Defendant indicated that his attorney had not advised him that a five-year post-release parole condition was a part of his sentence, which defense counsel corroborated, indicating: "I didn't fill out the [NERA f]orm, Judge." After the judge explained to defendant the NERA parameters and its significance, defendant replied that he understood and wished to proceed.

Upon further questioning by the judge, defendant confirmed that he understood the rights he was giving up, that he was not forced, threatened, or pressured to plead guilty, and that no other promises were made to him other than the ones discussed on the record. Turning to the factual basis for

[1] See N.J.S.A. 2C:43-7.2.

defendant's plea, the following exchange ensued between defendant and trial counsel:

> [DEFENSE COUNSEL]: [O]n August 9, 2013, were you in Jersey City?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: And you were with Crystal Reid at that time?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: While you were with her at that time, you had an altercation with her?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: During that altercation, you put your hands around her throat and strangled her?
>
> [DEFENDANT]: Yes.
>
> [DEFENSE COUNSEL]: After that, you stabbed her a number of times?
>
> [DEFENDANT]: Yes, sir.
>
> . . . .
>
> [DEFENSE COUNSEL]: And you caused her death?
>
> [DEFENDANT]: Yes.

At that point, the judge joined the colloquy and questioned defendant as follows:

[COURT]: You knew when you were strangling her and stabbing her that . . . death was a probable result, is that correct?

[DEFENDANT]: Yes.

[COURT]: You knew what you were doing, that's the point.

[DEFENDANT]: No.

[COURT]: You didn't know what you were doing?

[DEFENDANT]: No.

[DEFENSE COUNSEL]: When you strangled her, you knew that was going to cause her death, is that correct?

[DEFENDANT]: He asked me did I know what I was doing. I was under the influence. I didn't know what I was doing. I didn't realize until I was in Homicide hours later. So, that was the question he asked.

[COURT]: Did you know at the time, sir, when you stabbed her, that you were stabbing her?

[DEFENDANT]: No.

[COURT]: You didn't know that?

[DEFENDANT]: No.

[DEFENSE COUNSEL]: You didn't know you were stabbing her at the time?

[DEFENDANT]: No.

[DEFENSE COUNSEL]: When you strangled her, you knew you were strangling her, is that correct?

[DEFENDANT]: No.

The judge interjected that the factual basis was "not acceptable" and queried whether defendant was asserting a "voluntary intoxication through alcohol" defense. After further discussion between the judge and the attorneys, the plea colloquy continued as follows:

> [DEFENSE COUNSEL]: You called your sister and said [you] just did something bad to [Reid]. Right after this happened, do you remember saying that [you] don't remember?
>
> [DEFENDANT]: That's what the [d]iscovery said, though.
>
> [COURT]: If he's not prepared to accept responsibility for what he did, I can't accept the plea. The law requires . . . that [defendant's] conduct in this matter be characterized as either purposeful or knowing.
>
> Just for your own education, sir, you should understand, voluntary intoxication is not a defense ordinarily to the charge of murder.
>
> [DEFENDANT]: So, it don't lead to aggravated manslaughter. It is still murder.
>
> [COURT]: Aggravated manslaughter is not murder. It is a lesser form of homicide. It is not murder.
>
> [DEFENDANT]: All right. You want me to just -- .

10

[COURT]: Here's the problem as I see it, sir, that, if in fact what your lawyer asked you is true, that immediately you contacted someone and informed them that you have done something bad, it's clear you knew what you were doing.

[DEFENDANT]: I said I didn't remember, but I guess I did. Like I said, that's the paperwork saying yes. I guess I did it, yes.

[COURT]: There's never been a question as to whether or not you did it.

[DEFENDANT]: Yeah.

[COURT]: The question is, when you did it, did you know that what you were doing was probably going to cause her death?

[DEFENDANT]: Yes.

Without making the requisite findings required under Rule 3:9-2, setting forth the standards and requirements for a court's acceptance of a guilty plea, the judge set a sentencing date.

On April 15, 2016, defendant appeared for sentencing. The judge sentenced defendant in accordance with the plea agreement after finding aggravating factors three, six, and nine pertaining to defendant's risk of re-offense, criminal record, and need for deterrence. See N.J.S.A. 2C:44-1(a)(3), (6), and (9). The judge found no mitigating factors. During the sentencing hearing, trial counsel had argued that "[d]rugs were a contributing factor in

11

terms of [defendant's] drug problem." Trial counsel added that defendant took "full responsibility" for his actions, was "remorseful," and "wanted to resolve the case" from the beginning to avoid subjecting the victim's family to further anguish. In his sentencing allocution, defendant echoed his attorney's comments.

Defendant's presentence report, which his attorney confirmed was accurate, referenced an excerpt from a psychological evaluation dated January 18, 2000, that was prepared by Edward J. Dougherty, Ed.D., when defendant was almost fifteen years old.[2] The evaluation was obtained to determine "[defendant's] competency to stand trial" on aggravated sexual assault related charges that were pending at the time. Although the psychologist concluded that defendant was competent to stand trial, he recommended that "care . . . be taken to explain court proceedings and options to him in simple language," checking his comprehension "by asking him to explain it in his own words."

In the evaluation, defendant was described as having "sever[e] intellectual and academic limitations." According to the psychologist, defendant "function[ed] at a mildly mentally retarded level" and was "deficient in his ability to reason abstractly, particularly in verbal areas." The psychologist also

---

[2] Defendant was born in February 1985.

12

noted that as a young child, defendant showed "indications of psychiatric difficulties, specifically, paranoia, and brief auditory hallucinations." However, "it [was] unclear whether [the psychiatric difficulties were] the result of [defendant's] neurological deficits or whether he [was] beginning to develop a more specific psychiatric disorder."

After defendant was sentenced, he appealed his conviction, and we considered his appeal on the SOA calendar. During oral argument before us, defendant's appellate attorney argued that "[t]he factual basis . . . was insufficient to establish purposeful and knowing murder to sustain th[e] conviction" because defendant "was under the influence" of alcohol and "did not know or realize what he was doing in that moment."

Following the argument, we issued an order stating:

> Having considered the record and argument of counsel, and it appearing that the issues on appeal relate solely to the sentence imposed, we are satisfied that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion. State v. Cassady, 198 N.J. 165 (2009); State v. Roth, 95 N.J. 334 (1984). We further find that there was an adequate factual basis for defendant's guilty plea.
>
> [State v. McFadden, No. A-4636-16 (App. Div. Jan. 9, 2018).]

Defendant did not file a petition for certification with the New Jersey Supreme Court. Instead, on June 7, 2019, defendant filed a timely pro se PCR petition. In the petition, defendant raised several claims of ineffective assistance of trial and appellate counsel. As to trial counsel, defendant argued his attorney was ineffective in preparing his case by not interviewing witnesses or conferring with him sufficiently; failing to investigate his learning and neurological disabilities, cognitive impairments, and history of mental illness; failing to seek a competency evaluation or raise diminished capacity and intoxication as affirmative defenses; and pressuring him into pleading guilty without understanding the punitive ramifications, including the period of parole supervision, or ensuring he provided an adequate factual basis for the plea. As to appellate counsel, defendant argued his attorney was ineffective by failing to prosecute his appeal on the plenary calendar, instead of the SOA calendar.

After defendant was assigned PCR counsel, he filed a supplemental certification, averring that he had asked his trial attorney for "a competency examination" and that he "prepare" an intoxication defense. According to defendant, he informed his attorney that he had been "drinking heavily on the night in question." He had consumed "multiple beers, [and] vodka." He had also ingested "mollies" and "used PCP." Defendant stated he "remember[ed]

14

nothing about that night" and "[e]verything [he] kn[e]w about that night . . . [he had] heard from someone else." Defendant further certified he "did not want to plead guilty but felt [he] had to" because his attorney "only met with [him] two times before the plea," "never discussed trial strategy other than [insisting] that [he] take a plea," and "did not re[]assure [him] that he could go to trial and be prepared."

On January 23, 2020, the PCR judge heard oral argument. In a February 13, 2020 written decision, the judge found "no disputed issues of material facts" and denied defendant's petition without an evidentiary hearing. The judge determined defendant failed to establish a prima facie case of IAC under the first prong articulated in Strickland v. Washington, 466 U.S. 668, 694 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), because defendant could not "show that counsel's performance fell below an objective standard of reasonableness." Turning to the prejudice prong of the Strickland/Fritz test, the judge determined that "[b]ased on all of the evidence pointing to the guilt of [defendant], it [was] highly unlikely that if [defendant] went to trial and was convicted he would have received a [thirty] with [thirty] considering his criminal history." The judge pointed out that because defendant

"faced [thirty] years to life on the murder charge" if convicted at trial, defendant "obtained a favorable plea bargain."

In specifically rejecting defendant's claims that trial counsel's failure to investigate his mental state and an intoxication defense constituted deficient performance, the judge found defendant's incriminating statements to Glaster and Washington on the night of the murder indicated "he was of sound mind and able to comprehend what he was doing when he killed the victim." The judge also discredited defendant's supplemental certification in which he indicated he had no independent recollection of the events and detailed the drugs and alcohol he had ingested that night. Citing State v. Cameron, 104 N.J. 42, 54 (1986), the judge referred to defendant's statements as "nothing more than conclusory labels" that were insufficient to establish the requisite "prostration of faculties" needed for voluntary intoxication "to negate a purposeful or knowing mens rea." Moreover, according to the judge, "the record [was] very unclear as to exactly how many drinks or the amount of drugs . . . [defendant had] consumed during the night in question."

As to defendant's plea, after reviewing the plea transcript, the judge concluded defendant "plead guilty in a voluntary, intelligent and knowing manner." The judge determined "[a]ny ambiguities . . . regard[ing] . . .

16 \qquad

whether . . . defendant knew what he was doing at the time, were resolved," and defendant "was not coerced to move forward with a plea." Finally, the judge determined that appellate counsel's election "to go the route of [SOA,]" which does not require a brief to be filed, was "a reasonable choice to make in light of the substantial evidence against . . . [defendant] in th[e] case." This appeal followed.

## II.

Where, as here, no evidentiary hearing was held, we "'conduct a de novo review of both the factual findings and legal conclusions of the PCR court.'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). However, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013).

"Although [Rule] 3:22-1 does not require evidentiary hearings to be held on post-conviction relief petitions, [Rule] 3:22-10 recognizes judicial discretion to conduct such hearings." State v. Russo, 333 N.J. Super. 119, 138 (App. Div. 2000). That said, PCR courts should grant evidentiary hearings in their discretion when the defendant has presented a prima facie claim, material issues

of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013); State v. Marshall, 148 N.J. 89, 158 (1997). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002).

To establish a prima facie claim of IAC to set aside a guilty plea, a defendant must satisfy the two-prong Strickland/Fritz test. First, a defendant must show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment.'" Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). Under this prong, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" and "[t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689). Accordingly, "[i]f counsel thoroughly investigates law and facts, considering all possible options, his or her trial strategy is 'virtually

unchalleng[e]able.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690).

"In some cases, whether counsel's conduct is reasonable 'may be determined or substantially influenced by the defendant's own statements or actions.'" State v. Martini, 160 N.J. 248, 266 (1999) (quoting Strickland, 466 U.S. at 691). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691.

To satisfy the second prong, a defendant must prove he suffered prejudice due to counsel's deficient performance. Id. at 687. To that end, a defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694); see also Fritz, 105 N.J. at 52.

To establish prejudice in the context of a negotiated guilty plea, "a defendant must show . . . 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have

insisted on going to trial.'" State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)); see also State v. Gaitan, 209 N.J. 339, 351 (2012). To that end, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "'rational under the circumstances.'" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." Ibid.

The same Strickland/Fritz standard applies to claims of ineffective assistance of appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). However, "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant." State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Instead, counsel may "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52. Furthermore, appellate counsel must "examine the record with a view to selecting the most promising issues for review." Id. at 752. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v.

Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985)).

III.

Here, the IAC claims advanced by defendant on appeal may be divided into three categories: (1) trial counsel was ineffective by failing to advance diminished capacity or intoxication as affirmative defenses and failing to discuss the defenses with him; (2) trial counsel was ineffective by failing to investigate his learning and neurological disabilities, cognitive impairments, and history of mental illness to ensure his plea was entered knowingly and intelligently, with an understanding of the charge and the consequences of the plea; and (3) appellate counsel was ineffective by failing to properly litigate an appeal challenging his conviction.

Regarding trial counsel's purported deficient performance, defendant asserts "at the time of [Reid's] death, [he] was visibly intoxicated, after ingesting a cornucopia of drugs and alcohol," that included "dr[inking] an entire fifth-sized bottle of vodka, . . . [and] a six-pack," as well as "smok[ing] a PCP-laced . . . blunt," and consuming "Ecstasy." Defendant contends, "[b]etween his mentally retarded status, and his shockingly copious drug and alcohol

21

consumption," he "had obvious self-induced and pathological intoxication defenses against a murder charge."

He insists that "counsel did not consult with [him], or communicate with him in the deliberate, sensitive, careful, compassionate, and thorough manner, that [defendant's] disabilities demand," nor did counsel "discuss[] trial strategy other than [counsel's] insistence that [he] take a plea." Instead, "counsel kept [defendant] in the dark about the punitive ramifications of a murder conviction"; failed to "pursue[] the glaringly obvious defenses that [defendant] [] lacked the necessary mens rea to commit murder"; ignored defendant's "express, contrary attestations and protestations, delivered in open [] court"; and "shepherded him into a murder conviction." In support, defendant relies on the plea hearing transcript, the presentence report, his PCR petition, his supplemental PCR certification, and the State's investigation of the homicide.

As previously noted, counsel's strategic decisions are usually unassailable unless they were "not preceded by a 'thorough investigation of law and facts' and a consideration of all 'plausible options.'" Savage, 120 N.J. at 618 (quoting Strickland, 466 U.S. at 690-91). Although "'diminished capacity is not an affirmative defense that will justify or excuse conduct otherwise criminal,'" it "'allows the introduction of evidence relevant to the question of whether the

State has proven beyond a reasonable doubt the requisite criminal mental state,'" and "'relevant evidence of mental disease or defect may be considered . . . as negating the state of mind required for a particular offense,'" including murder. State v. Juinta, 224 N.J. Super. 711, 720 (App. Div. 1988) (quoting State v. Breakiron, 108 N.J. 591, 620-21 (1987)). "[T]he defense of intoxication . . . is similar to diminished capacity insofar as it bears upon the required mental states of the crime." Id. at 722 (second alteration in original) (quoting Breakiron, 108 N.J. at 603-604).

Thus, "[s]elf-induced intoxication can reduce the offense of purposeful or knowing murder to manslaughter or aggravated manslaughter." State v. Mauricio, 117 N.J. 402, 418 (1990); see also N.J.S.A. 2C:2-8. "However, the degree of intoxication sufficient to negate an element of an offense 'must be of an extremely high level.'" State v. Vandeweaghe, 351 N.J. Super. 467, 477 (App. Div. 2002) (quoting Cameron, 104 N.J. at 54). To qualify, the level of "'intoxication' contemplates a condition by which the mental or physical capacities of the actor, because of the introduction of intoxicating substances into the body, are so prostrated as to render him incapable of purposeful or knowing conduct." Cameron, 104 N.J. at 58.

In Cameron, the Court articulated the following six factors to be considered in determining whether a defendant's intoxication is sufficient to satisfy the "prostration of faculties" test:

> the quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events.
>
> [Id. at 56.]

Here, we find defendant made out a prima facie showing and raised material disputed facts to warrant an evidentiary hearing to fully present his IAC claim regarding the reasonableness and thoroughness of trial counsel's investigation of defendant's mental state at the time of the homicide, including the viability of raising a diminished capacity or intoxication defense. In the context of this claim, the judge may also consider defendant's assertion that trial counsel failed to adequately discuss these possible defenses with him. See Porter, 216 N.J. at 357 (finding an evidentiary hearing was warranted where defendant made out a prima facie showing of IAC "based on [trial counsel's] failure to investigate an alibi defense"); see also State v. Chew, 179 N.J. 186, 217 (2004) ("[C]ounsel has a duty to make reasonable investigations or to make

24

a reasonable decision that makes particular investigations unnecessary." (alteration in original) (quoting Strickland, 466 U.S. at 691)).

As the Court has noted, sometimes, "[t]here is no substitute for placing a witness[, including trial counsel,] on the stand and having the testimony scrutinized by an impartial factfinder." Porter, 216 N.J. at 356. "Certain factual questions, 'including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney,' are critical to claims of [IAC] and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" Id. at 355 (first alteration in original) (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998)). "Even a suspicious or questionable affidavit supporting a PCR petition 'must be tested for credibility and cannot be summarily rejected.'" Ibid. (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)). "These determinations are 'best made' through an evidentiary hearing." Ibid. (quoting Pyatt, 316 N.J. Super. at 51).

Viewing the facts in the light most favorable to the defendant, "[i]f . . . the PCR claim has a reasonable probability of being meritorious, then the defendant should ordinarily receive an evidentiary hearing in order to prove his entitlement to relief." State v. Jones, 219 N.J. 298, 311 (2014). This is such a case.

Therefore, we remand the matter for the PCR court to conduct an evidentiary hearing.

Defendant also contends that trial counsel did not ensure that he understood "the plea's punitive ramifications," including the direct consequence of five years on parole following discharge, and he was not advised of the differences between manslaughter and murder.

In State v. O'Donnell, 435 N.J. Super. 351, 376-77 (App. Div. 2014), we reversed the denial of PCR and remanded for an evidentiary hearing in a case where a potential diminished capacity defense was supported by both an expert opinion and by the defendant's mental health history. We noted that the defendant "presented a plausible claim . . . that her attorney . . . urged her to plead guilty without adequate explanation despite months of preparation for trial." Id. at 376. We concluded that while "[a]cquittal was far from certain" and "a jury may have been persuaded to reject [the defense expert's] opinion," it was "not self-evident that pleading guilty was a reasonable strategy." Ibid.

Here, we are satisfied defendant presented a prima facie IAC claim that his attorney urged him to plead guilty without an adequate explanation of the nature of the charge and the punitive consequences of the plea to warrant an evidentiary hearing. In light of the plea colloquy and defendant's supplemental

26

certification, we are constrained to remand for an evidentiary hearing to resolve the disputed factual issues in connection with this claim as well.

Finally, we consider defendant's argument that appellate counsel was ineffective by not "properly litigat[ing]" his conviction in "the appropriate forum" but, instead, "during a hearing specifically reserved for reviewing sentences." We reject defendant's claim as not meeting the Strickland/Fritz test. On the record before us, defendant presents no credible evidence that appellate counsel did not thoroughly examine the record and select the most promising issue in counsel's professional judgment. Further, we ascribe no constitutional significance to the forum in which defendant's direct appeal was adjudicated.

Related to this claim, defendant also asserts that the factual basis for his guilty plea did not establish the essential elements of murder, specifically "the purposeful or knowing mens rea element to murder." We note defendant did not argue he was entitled to withdraw his guilty plea under State v. Slater, 198 N.J. 145 (2009), or file a plea withdrawal motion under Rule 3:21-1. We decline to address these issues on this record.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION