**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1760-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY WHITE a/k/a
ANDRE PINARD,

    Defendant-Appellant.

_____

Submitted September 12, 2023 – Decided December 13, 2023

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-12-3098.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Amanda Gerilyn Schwartz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Anthony White appeals from a November 29, 2021 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. After reviewing the record in light of the contentions advanced on appeal, we affirm but do so for somewhat different reasons than those expressed by the PCR judge. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (recognizing an appellate court may affirm for other reasons because "appeals are taken from orders and judgments and not from opinions").

I.

In 2014, a jury convicted defendant of second-degree theft by deception, N.J.S.A. 2C:20-4 and -2; second-degree theft by extortion, N.J.S.A. 2C:20-5 and -2; and third-degree terroristic threats, N.J.S.A. 2C:12-3(b), by defrauding a woman of more than $200,000. The trial judge granted the State's motion for a discretionary extended term as a persistent offender under N.J.S.A. 2C:44-3(a), and sentenced defendant to an aggregate prison term of twelve years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(d)(13), on the extortion conviction. We affirmed defendant's convictions and sentence on direct appeal. State v. White, No. A-1555-14 (slip op. at 8-19) (App. Div. June 15, 2016).

We incorporate by reference the evidence adduced at trial, which is set forth at length in our prior opinion. Id. at 1-6. In summary, in January 2013,

defendant met Linda[1] in Atlantic City through mutual acquaintances.  Id. at 1.

Within days of meeting, defendant convinced Linda that two high stakes

gamblers "had propositioned him with a business venture to invest in a new

'production company.'"  Id. at 2.  Linda signed a contract "guaranteeing her 25%

return on her investment" but defendant removed the documents from Linda's

hotel room.  Ibid.

Thereafter, Linda gave large sums of money to defendant after

withdrawing cash from her bank account and Revel Hotel's global cash access

machine.  Id. at 2-3.  Apparently suspicious of the activity, Revel Hotel security

questioned Linda.  Id. at 3.  "Linda told security that the cash was an investment,

and gave them defendant's name, but refused to cooperate further."  Ibid.

Thereafter, defendant declined to take money from Linda on the casino floor.

Ibid.

But a week later, defendant told Linda that during "a big drug bust . . . .

police had confiscated $40,000 Linda had given him" and "she would need to

give him another $40,000."  Id. at 3-4.  Linda continued to honor defendant's

requests for money.  Id. at 4.  When her funds were depleted, Linda asked her

---

[1] Consistent with our prior opinion, we use only the victim's first name to protect
her privacy.  White, slip op. at 1.

A-1760-21

parents for money. Id. at 5. "By that time she had given defendant $233,672. She had drained over $100,000 from her bank accounts, borrowed $49,000 against her credit line, and had also given defendant $73,000 she had been given by her parents." Ibid.

The following month, Linda "gave defendant her tax return money, as well as additional monies that had been wired to her by her mother." Ibid. After that exchange, defendant touched Linda's legs and when she refused his advances, defendant punched her legs causing her to sustain bruises. Id. at 5-6. Ultimately, Linda realized "she had been 'bamboozled'" and reported defendant's conduct to law enforcement. Id. at 6. In the judgment of conviction, the trial judge noted defendant "preyed upon a young, immature, susceptible woman in order to scam and scheme her out of hundreds of thousands of dollars."

Defendant filed a timely petition for PCR. Thereafter, assigned counsel filed a supplemental brief on his behalf. Defendant raised a litany of issues, claiming he was denied the effective assistance of trial and appellate counsel. Among other arguments, defendant argued trial counsel ignored his theory and presented a defense that varied from the information he provided her. Defendant further claimed trial counsel failed to call witnesses who would have corroborated his account. In essence, defendant argued:

[Linda] was giving [him] money as part of a gambling arrangement and the arrangement turned into a romantic entanglement and sexual activity between the two. When [Linda] discovered that . . . [d]efendant was still sexually involved with his former girlfriend, Yenesis [Vega], [Linda] became sad, upset, and enraged. At that point [Linda] wanted nothing to do with . . . [d]efendant and began demanding that he pay her back all the money she gave him that unfortunately was lost while gambling. [Linda] had threatened . . . [d]efendant that she would call the police and make up lies about him to get him into trouble.

Defendant's PCR submission included copies of emails between defendant and trial counsel concerning defendant's theory and his proposed witnesses. Also included were three reports authored by trial counsel's investigator, memorializing separate interviews conducted by trial counsel and the investigator with three defense witnesses: defendant's cousin, Scott Yates; defendant's father, Anthony Bailey; and defendant's on-again, off-again girlfriend, Vega. Defendant did not, however, annex to his PCR submission sworn statements of any of the three witnesses supporting his "romantic entanglement" theory.

In a written opinion, the PCR judge, who was not the trial judge, denied relief. The judge first found certain claims were barred under Rule 3:22-4 because they could have been asserted on direct appeal. The judge nonetheless

5

considered most of the issues raised in view of the <u>Strickland/Fritz</u>[2] framework applicable to ineffective-assistance-of-counsel (IAC) claims and concluded they lacked merit.

Pertinent to defendant's renewed contentions on appeal, the PCR judge found "[t]rial counsel's failure to call any witnesses was strategic and not objectively unreasonable or deficient." Citing the investigative reports of each witness, the judge noted Yates said he "met with [Linda] to discuss online sports betting"; "[Linda] was interested in investing and making a lot of money"; "and he offered to help her set up an online sports betting account or use another account." Citing the email correspondence between trial counsel and defendant, the judge found "trial counsel had serious reservations about calling . . . Yates as a witness" because "online sports betting was illegal." Accordingly, Yates's testimony about that subject "would raise Fifth Amendment issues."

The judge summarized Vega's proposed testimony as follows: "Vega was [defendant]'s on-again, off-again girlfriend. During the timeframe in question,

---

[2] <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) (recognizing to establish an IAC claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense"); <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987) (adopting the <u>Strickland</u> two-part test in New Jersey).

. . . Vega believed that [defendant] and [Linda] were dating. At one point, [Linda] contacted . . . Vega and told her that [defendant] owed her money." Noting Vega lived in Florida "and may not have been available to testify," the judge nonetheless determined her account "actually corroborates [Linda]'s trial testimony." Accordingly, the judge found Vega's "testimony would have supported the State's theory of the case."

Citing the report of Bailey's interview, the judge noted he met Linda "several times during the timeframe in question" and "[o]n one occasion, [he] witnessed [Linda] express concern over the fact that [defendant] was losing money at the casinos." Implicitly finding there was no evidence in the record supporting trial counsel's reasons for not calling Bailey as a witness, the judge reasoned given Bailey's "interest in the outcome of the case, it [wa]s plausible that trial counsel believed that a jury would not find him credible."

The PCR judge also rejected defendant's argument that his 2006 Colorado conviction did not qualify as a "prior crime," and as such, he was improperly sentenced to an extended term. However, the judge found the conviction "unconstitutional" because it was not the result of a knowing and intelligent guilty plea. For that reason, the judge found defendant was improperly sentenced to an extended term. Accordingly, in January 2022, defendant was

resentenced to an aggregate prison term of nine years, subject to NERA on the

extortion conviction.

On appeal, defendant raises the following points for our consideration:

POINT I

THE PCR COURT ERRED WHEN IT FOUND SEVERAL OF DEFENDANT'S PCR CLAIMS WERE PROCEDURALLY BARRED.

1. Defendant's PCR claims were not barred under R. 3:22-4(a)(1).

POINT II

AS DEFENDANT HAD SHOWN THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED BY DENYING DEFENDANT'S PCR PETITION.

1. Trial counsel failed to present exculpatory witnesses.

2. Trial counsel failed to consider and investigate the defenses presented to her by defendant.

3. Trial counsel failed to object to prejudicial remarks made by the assistant prosecutor during both opening remarks.

4. Trial counsel's failure to object to prejudicial testimony and evidence undermined the success of defendant's direct appeal.

5. As trial counsel was ineffective during plea negotiations, defendant did not make an informed decision when he rejected the State's plea offer.

6. Trial counsel's cumulative errors denied defendant effective legal representation.

## POINT III

THE PCR [COURT] ERRED WHEN IT FOUND THAT DEFENDANT WAS NOT DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

1. Appellate counsel was ineffective by failing to argue that the prosecutor's opening and closing remarks were prejudicial.

## POINT IV

AS THERE WERE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

## II.

"We review a judge's decision to deny a PCR petition without a hearing for abuse of discretion." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (quoting State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)). Because the PCR judge did not hold an evidentiary hearing, we review de novo both the factual inferences drawn by the judge from the record and the judge's

legal conclusions.  State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013).

When petitioning for PCR, the defendant must establish "by a preponderance of the credible evidence" entitlement to the requested relief. Nash, 212 N.J. at 541 (quoting State v. Preciose, 129 N.J. 451, 459 (1992)).  Our rules anticipate the need to hold an evidentiary hearing on a PCR petition, "only upon the establishment of a prima facie case in support of post-conviction relief."  R. 3:22-10(b).  "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'"  State v. Porter, 216 N.J. 343, 355 (2013) (emphasis added) (quoting R. 3:22-10(b)).

To succeed on an IAC claim, a defendant must initially show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687).  Secondly, a defendant must show by a "reasonable probability" the deficient performance affected the outcome. Id. at 58.  "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

To satisfy the first Strickland prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his [or her] responsibilities." State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90). "[I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is 'virtually unchallengeable.'" State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 690-91).

Nonetheless, "[c]ertain factual questions, 'including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney,' are critical to claims of ineffective assistance of counsel and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" Porter, 216 N.J. at 355 (second alteration in original) (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998)). "These determinations are 'best made' through an evidentiary hearing." Ibid.

A PCR petitioner asserting that his trial attorney inadequately investigated a potential witness "must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal

A-1760-21

knowledge of the affiant or the person making the certification." Porter, 216 N.J. at 353 (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

Further, criminal defendants have a Sixth Amendment right to counsel for a first appeal as a matter of right. Douglas v. California, 372 U.S. 353, 356 (1963). As a result, a defendant may bring an IAC claim against appellate counsel. Evitts v. Lucey, 469 U.S. 387, 394 (1985). Appellate counsel, however, is not required to present all non-frivolous claims. Jones v. Barnes, 463 U.S. 745, 751 (1983). Similar to trial counsel, the appellate attorney may use professional judgment in deciding whether to assert meritorious claims suggested by the client. Id. at 754. The same Strickland/Fritz standard applies to the assessment of IAC claims asserted against appellate counsel. See State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007).

III.

As a preliminary matter, we disagree with the PCR judge's determination that certain claims asserted in defendant's petition could have been raised on direct appeal and therefore were barred under Rule 3:22-4(a)(1). See Nash, 212 N.J. at 546 (recognizing Rule 3:22-4(a) bars a petitioner from asserting a PCR claim that could have been raised on direct appeal). Relevant here, these claims

12                                                                    A-1760-21

include trial counsel's failure to: conduct an investigation; terminate her representation after her relationship with defendant deteriorated; recuse herself because "she was nine[] months pregnant during trial"; "provide a third-party defense"; "call certain exculpatory witnesses"; and present defendant's theory of the case to the jury (collectively, point I claims).

Because defendant's point I claims were not allegations of substantive legal errors contained completely within the trial record, see State v. Quezada, 402 N.J. Super. 277, 280 (App. Div. 2008), they were not appropriate for appellate review, see Preciose, 129 N.J. at 460. Instead, defendant's challenges to trial counsel's effectiveness claims were better suited for a PCR proceeding. See State v. McDonald, 211 N.J. 4, 30 (2012); see also State v. McQuaid, 147 N.J. 464, 484 (1997) (recognizing "claims that differ from those asserted below will be heard on PCR").

Nonetheless, with the exception of defendant's argument that trial counsel failed to investigate his claims, the PCR judge considered defendant's point I claims on the merits and found them unavailing. Further, in her written decision, the judge rejected defendant's remaining claims – some of which are reprised on appeal in points II and III – that he was denied the effective assistance of trial and appellate counsel.

A-1760-21

Having considered defendant's renewed arguments in view of the PCR judge's decision and the applicable law, we conclude they lack sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), beyond the comments that follow. We affirm substantially for the reasons stated by the PCR judge.

We part company, however, with the judge's reasons for finding an evidentiary hearing was not warranted on defendant's claim that trial counsel failed to present the testimony of Vega and Bailey. Unlike the email correspondence underscoring trial counsel's reason for refraining from calling Yates as a witness, the record does not disclose counsel's reasons for not calling Vega and Bailey.

Defendant maintains trial counsel rejected his theory that he was romantically involved with Linda, and that Vega and Bailey would have corroborated that theory at trial. Crucially, however, defendant failed to support his claims on PCR with sworn statements of Vega or Bailey. Thus, even though trial counsel's strategy is not readily apparent from the email exchanges, defendant has done no more than "make bald assertions that he was denied the effective assistance of counsel." See Cummings, 321 N.J. Super. at 170.

The record supports the PCR judge's findings on defendant's other claims. Accordingly, we are satisfied from our review of the record that defendant failed

14

to make a prima facie showing of ineffectiveness of trial and appellate counsel under the <u>Strickland/Fritz</u> test. We therefore discern no abuse of discretion in the denial of defendant's PCR petition without an evidentiary hearing. <u>See</u> <u>Preciose</u>, 129 N.J. at 462-63.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1760-21