**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2079-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LINDA Y. NAULTY, a/k/a
KIMBERLY A. GUNDIKUNST,
KIMBERLY A. JACKSON, and
LINDA Y. JACKSON,

    Defendant- Appellant.

_____

Submitted January 27, 2026 – Decided June 11, 2026

Before Judges Sumners, Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment Nos. 21-07-0748 and 21-09-1107.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the brief).

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Linda Y. Naulty appeals the February 13, 2025 Law Division order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. In November 2021, defendant pled guilty to first-degree strict liability for drug-induced death and third-degree possession of a controlled dangerous substance (CDS) with intent to distribute. Defendant's convictions arose from a February 7, 2021 incident in which she distributed drugs to an individual who then died from a fentanyl overdose. Defendant contends that her plea counsel was ineffective. After reviewing the record in light of the governing legal principles, we are constrained to reverse and remand for an evidentiary hearing to further explore defendant's contentions that plea counsel was ineffective for failing to investigate the circumstances surrounding the drug-induced death.

I.

We discern the following facts and procedural history from the record. On or about February 7, 2021, defendant distributed heroin laced with fentanyl to the victim in Lumberton Township. On February 8, 2021, the victim died from a fentanyl overdose. While unclear from the record, it appears that police

A-2079-24

orchestrated a controlled buy on the same day to engage defendant, who later confessed to police that she had distributed drugs to the victim.

On July 23, 2021, a grand jury returned a seven-count indictment, 2021-07-0748-I, charging defendant with third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (counts one, four, and five); third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(13) (counts two and six); first-degree strict liability for drug-induced death, N.J.S.A. 2C:35-9(a) (count three); and third-degree conspiracy to distribute a CDS, N.J.S.A. 2C:5-2a(1), N.J.S.A. 2C:35-5(a)(1), and N.J.S.A. 2C:35-5(b)(13) (count seven).

On September 30, 2021, a grand jury returned a separate five-count indictment, 2021-09-1107-I,[1] charging defendant with third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (counts one, two, three, and four), and third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(5) (count five).

---

[1] At the November 29, 2021, plea hearing, defendant informed her counsel and the court that indictment 2021-07-0748-I incorrectly listed the offense date as January 10, 2020. According to defendant's plea counsel, the correct date of the offense for the second indictment was February 8, 2021. The trial court found that while there were "ministerial issues with the dates" they were not "substantive enough to warrant" a new plea hearing. The trial court accepted defendant's guilty plea to strict liability for drug-induced death and possession with intent to distribute, finding that defendant entered that plea "knowingly, freely[,] and voluntarily."

A-2079-24

On November 8 and 29, 2021, defendant pled guilty to count three of indictment 2021-07-0748-I, first-degree strict liability for drug-induced death, and count five of indictment 2021-9-1107-I, third-degree possession of a CDS with intent to distribute. In exchange for the dismissal of the remaining counts of each indictment, the State recommended that defendant be sentenced to an eight-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(a), for the first-degree strict liability drug-induced death count, and a consecutive three-year prison term for the possession-with-intent-to-distribute count.

On January 21, 2022, defendant was sentenced in accordance with the plea agreement to eight years subject to NERA for first-degree strict liability for drug-induced death, and three years for third-degree possession of a CDS with intent to distribute. The trial court found aggravating factors three, the risk that the defendant will commit another offense, and nine, the need for deterring the defendant and others from violating the law, and ran defendant's sentences consecutively.

On March 29, 2023, following defendant's excessive sentencing appeal, we remanded the matter for the trial court to explain its reasons for imposing

4

consecutive sentences. On June 5, 2023, the trial court modified defendant's sentences to run concurrently, not consecutively.

On November 6, 2023, defendant filed a self-represented petition for post-conviction relief (PCR). In her petition, defendant alleged that her plea counsel was ineffective for: (1) failing to investigate and disprove that the CDS found in her possession after a controlled buy was in fact the same as the "3 wax fold" CDS found with the deceased victim, considering defendant's last contact with the victim was February 7, 2021 and he passed away the next day; (2) failing to investigate the conditions under which defendant waived her Miranda rights, considering she was under the influence of heroin at the time her rights were administered to her; (3) failing to present mitigating factors two, four, or twelve at sentencing, N.J.S.A. 2C:44-1(b) (2), (4), (12); and (4) failing to object to the fairness of the controlled buy with defendant, which occurred the same day the victim overdosed. Although PCR counsel was appointed, the record before us does not reflect that counsel submitted a brief in support of defendant's petition.

On February 13, 2025, the PCR court heard oral argument on defendant's petition. At oral argument, PCR counsel characterized defendant's requested relief as "a very narrow application for post-conviction relief," explaining that "the thrust of [defendant's] argument is that plea counsel failed to really press

on [m]itigating [f]actor [f]our."  Accordingly, the only issue that the PCR court considered at oral argument was whether sentencing counsel was ineffective in failing to present mitigating factor four—substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense.  N.J.S.A. 2C:44-1(b)(4).  In an oral decision, the court found that mitigating factor four would not be "particularly dispositive" of the sentence defendant received and denied defendant's petition without an evidentiary hearing.  The PCR court did not consider any of the additional arguments raised in defendant's self-represented petition.

This appeal follows.  Defendant raises the following contentions for our consideration:

> POINT I
>
> THIS COURT SHOULD REVERSE THE PCR COURT'S DECISION TO DENY THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING BECAUSE THE DEFENDANT ESTABLISHED A PRIMA FACIE CLAIM THAT HER PLEA COUNSEL DID NOT INVESTIGATE THE CIRCUMSTANCES OF THE DRUG[-]INDUCED DEATH (NOT ADDRESSED BELOW).

A-2079-24

POINT II

THIS COURT SHOULD REVERSE THE PCR COURT'S DECISION TO DENY THE DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING ON THE ISSUE OF WHETHER THE DEFENDANT'S ATTORNEY WAS INEFFECTIVE AT SENTENCING (PARTIALLY ADDRESSED BELOW).

II.

A.

We begin by addressing the legal principles governing this appeal. Appellate review "of a PCR court's factual findings is 'necessarily deferential.'" State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). However, appellate courts review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 415-16 (2004). When the PCR court does not hold an evidentiary hearing, review of both the factual inferences drawn from the record and any legal conclusions is de novo. State v. Balbosa, 481 N.J. Super. 497, 519 (App. Div. 2025). See also State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014); State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). When applying such de novo review, appellate courts "view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014).

7

A defendant alleging ineffective assistance of counsel must satisfy both prongs of the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987). "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Second, the defendant must show that counsel's "deficient performance prejudiced the defense." Ibid.

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Counsel's performance is held to a standard of "reasonableness under prevailing professional norms"; thus, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. See also State v. Marshall, 148 N.J. 89, 156-57 (1997).

The second Strickland prong requires defendant to demonstrate that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Said differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694.

A-2079-24

A defendant's right to effective assistance of counsel extends to the plea negotiation process. See Missouri v. Frye, 566 U.S. 134, 140 (2012) (explaining that the right to effective assistance of counsel applies at the entry of a guilty plea). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler v. Cooper, 566 U.S. 156, 168 (2012). In a challenge to a conviction arising from a guilty plea, the defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "In other words, 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" Aburoumi, 464 N.J. Super. at 339 (quoting O'Donnell, 435 N.J. Super. at 371).

B.

Short of obtaining immediate relief in the form of vacating a conviction, an evidentiary hearing may be warranted to develop the factual record in connection with an ineffective assistance claim. State v. Preciose, 129 N.J. 451, 462-63 (1992). A PCR petitioner is not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule

3:22-10(b), which governs when an evidentiary hearing should be granted, provides:

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)). "[A] petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." Ibid. (quoting Cummings, 321 N.J. Super. at 170). "[V]ague, conclusory, or speculative" allegations are insufficient to warrant an evidentiary hearing. Ibid. (quoting Marshall, 148 N.J. at 158). "Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c). However, "[e]ven a suspicious or questionable affidavit supporting a PCR petition 'must

be tested for credibility and cannot be summarily rejected.'" Porter, 216 N.J. at 355 (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)).

"The development and resolution of ineffective assistance of counsel claims frequently call for an evidentiary hearing 'because the facts often lie outside the trial record and because the attorney's testimony may be required.'" Porter, 216 N.J. at 354 (quoting Preciose, 129 N.J. at 462). "Certain factual questions, 'including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney,' are critical to claims of ineffective assistance of counsel and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" Id. at 355 (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998)). "These determinations are 'best made' through an evidentiary hearing." Ibid. (quoting Pyatt, 316 N.J. Super. at 51).

III.

We first address defendant's contention that plea counsel was ineffective for failing to investigate the circumstances surrounding the victim's drug-induced death. Defendant raises two arguments on this issue. First, she contends the State failed to prove that the drugs she distributed on February 7, 2021, caused the victim's death the following day—an issue she claims plea

counsel failed to investigate, and which could have revealed an alternative source considering the victim was a habitual drug user. Second, defendant argues plea counsel was ineffective for failing to adequately review the video of defendant's interrogation and retain an expert to evaluate whether she voluntarily, knowingly, and intelligently waived her rights considering the likelihood that she was under the influence of heroin when she gave her statement to police.

A.

Beginning with defendant's contention that plea counsel failed to investigate a possible alternate source of the drugs that caused the victim's death, we first address the applicable substantive legal principles. The law is well settled that "[i]n representing a criminal defendant, defense counsel has a 'duty to make reasonable investigations.'" State v. Knight, 256 N.J. 404, 418 (2024) (quoting State v. Chew, 179 N.J. 186, 217 (2004)). Indeed, "[t]he right to a 'thorough defense investigation is also part of the right to counsel.'" Ibid. (quoting State v. Martinez, 461 N.J. Super. 249, 276-77 (App. Div. 2019)). However, courts cannot fault counsel "for failing to expend time or resources analyzing events about which they were never alerted." State v. DiFrisco, 174 N.J. 195, 228 (2002). Moreover, when a petitioner claims that counsel

inadequately investigated their case, the petitioner "must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170 (citing R. 1:6-6).

N.J.S.A. 2C:35-9, Strict Liability for Drug-Induced Deaths, provides:

> a. Any person who manufactures, distributes or dispenses methamphetamine, lysergic acid diethylamide, phencyclidine or any other controlled dangerous substance classified in Schedules I or II, or any controlled substance analog thereof, in violation of subsection a. of N.J.S. 2C:35-5, is strictly liable for a death which results from the injection, inhalation or ingestion of that substance, and is guilty of a crime of the first degree.

"No criminal intent to cause death is required to establish culpability. A defendant may be found guilty under N.J.S.A. 2C:35-9 even if he 'has absolutely no idea that [death] may occur.'" State v. Ferguson, 238 N.J. 78, 95 (2019) (alteration in original) (quoting State v. Maldonado, 137 N.J. 536, 547 (1994)).

Under the statute's causation prong, "[t]he State must prove not just that the use of the drugs caused the victim's death," but "that the victim's death was not '(a) too remote in its occurrence as to have a just bearing on the defendant's liability' or '(b) too dependent upon conduct of another person which was unrelated to the injection, inhalation or ingestion of the substance or its effect

13

as to have a just bearing on the defendant's liability.'"  Ibid. (quoting N.J.S.A.

2C:35-9(b)(2)(a) to (b)).

The causation element of the statute is distinct from other criminal offenses.  The official commentary accompanying the Comprehensive Drug Reform Act of 1987 provides:

> The State must further prove beyond a reasonable doubt that the death actually resulted from the injection, inhalation or ingestion of the very substance which had been distributed, dispensed, or manufactured by the defendant.  The State must thus prove that the death would not have occurred but for the defendant's illegal act of manufacturing, distributing or dispensing, and that the death was not too remote in its occurrence or otherwise too dependent upon conduct of another which was unrelated to the actual ingestion of the substance as to have a just bearing on the defendant's liability.
>
> This section specifically establishes the element of causation which must be proved by the State in a prosecution for this offense.  The element of causation specifically defined for this particular offense is patterned after the general penal code provisions found at N.J.S.A. 2C:2-3.  Notwithstanding the provisions of subsection e. of N.J.S.A. 2C:2-3, which would ordinarily apply with respect to strict liability offenses, however, the State need not show in a prosecution under this section that the death was a "probable consequence" of the defendant's conduct.
>
> [Official Commentary to the Comprehensive Drug Reform Act 23 (Nov. 23, 1987) (L. 1987, c. 106).]

14

The Legislature's distinction makes clear that the causation element is critical to proving the offense. Accordingly, to satisfy its burden the State must prove beyond a reasonable doubt that the drugs distributed by the defendant were in fact the drugs the decedent ingested.

Defendant argues that the victim was a habitual drug user and could have obtained the fatal drugs from another source. The record before us does not reflect whether plea counsel reviewed the State's evidence and determined that the causation element was established beyond a reasonable doubt, nor does it illustrate what proofs the State relied on to satisfy its burden under the causation element. If, during the police investigation, evidence was uncovered showing the victim obtained drugs from another source, such information would undoubtedly affect the State's case and influence defendant's decision to accept the plea offer.

Given the significance of the causation element under N.J.S.A. 2C:35-9(a), we conclude that—absent a strategic reason for doing so—plea counsel's failure to investigate the source of the drugs that caused the victim's death would constitute ineffective assistance. We note that the PCR court did not consider this issue at oral argument. Based on the incomplete record before us, we decline to dismiss defendant's claim without further factual findings. Where, as

15

here, the relevant facts "lie outside" of the existing record and require plea counsel's testimony, we conclude that an evidentiary hearing is necessary. See Porter, 216 N.J. at 354 (quoting Preciose, 129 N.J. at 462).

Furthermore, we reject the State's argument that defendant's plea obviated the need for further investigation, particularly considering that the overwhelming majority of cases are resolved by a plea agreement. We reiterate that the right to effective assistance of counsel extends to the plea negotiation process, see Frye, 566 U.S. at 140; Cooper, 566 U.S. at 168, and effective assistance includes undertaking adequate pre-trial investigations. See Porter, 216 N.J. at 352. We therefore reverse and remand for the PCR court to conduct an evidentiary hearing on this issue.

B.

We next address defendant's assertion that plea counsel was ineffective for failing to review the interrogation video and retain an expert to evaluate whether defendant voluntarily, knowingly, and intelligently waived her rights, given the likelihood that she was under the influence of heroin when she gave her statement to police. We first address the substantive legal principles that govern defendant's claim.

16

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State in Int. of M.P., 476 N.J. Super. 242, 260-61 (App. Div. 2023) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court "determined that a custodial interrogation by law enforcement officers is inherently coercive, automatically triggering the Fifth Amendment privilege against self-incrimination." State v. P.Z., 152 N.J. 86, 102 (1997) (citing Miranda, 384 U.S. 436). Miranda, established the principle that any person "subjected to police interrogation while in custody at the station or otherwise deprived of [their] freedom of action in any significant way," 384 U.S. at 477, "must be adequately and effectively apprised of [their] rights," id. at 467.

"An interrogee may, of course, waive Miranda rights, 'provided the waiver is made voluntarily, knowingly and intelligently.'" M.P., 476 N.J. Super. at 261 (quoting Miranda, 384 U.S. at 444). A totality of the circumstances test is employed to determine whether a defendant's Miranda waiver was valid. See State v. Erazo, 254 N.J. 277, 301 (2023) ("[T]he State bears the burden of proving beyond a reasonable doubt that the defendant's waiver of his Miranda

17

rights was made knowingly, intelligently, and voluntarily given the totality of the circumstances.").

"[T]he court considers all the facts surrounding the interrogation, including 'the defendant's age, education and intelligence, advice as to constitutional rights, length of [the] detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'" Ibid. (second alteration in original) (quoting Nyhammer, 197 N.J. at 402). "A confession made by a person while under the influence of drugs is not per se involuntary." State v. Wade, 40 N.J. 27, 35 (1963). Cf. State v. Warmbrun, 277 N.J. Super. 51, 64 (App. Div. 1994) (finding a valid waiver because "although defendant was very intoxicated," testimony revealed that "he was capable of communicating and . . . he was responsive in answering questions and could answer correctly questions such as his name, age, etc.").

We reiterate that plea counsel "has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." Chew, 179 N.J. at 210 (quoting State v. Martini, 160 N.J. 248, 266 (1999)). Moreover, "where 'reasonable professional judgments' support a defense counsel's decision to limit an investigation, the court should not find

ineffective performance of counsel." Id. at 205 (quoting Martini, 160 N.J. at 266).

Defendant argues that "the totality of the circumstances, including a review of the recording of the defendant's confession, might have proved the defendant was incapable of a voluntary, knowing, and intelligent waiver of her right against self-incrimination." Review of the record before us demonstrates that plea counsel was aware of defendant's drug use. Indeed, at sentencing, defendant's attorney argued that the court should consider mitigating factors in light of defendant's drug use, characterizing defendant as "a daily heroin addict." However, the record does not address whether plea counsel reviewed the interrogation video. Likewise, the record does not include either the video or a transcript of the recorded interrogation. We note that the PCR court did not consider this issue at oral argument.

While we recognize that "[a] confession made by a person while under the influence of drugs is not per se involuntary," Wade, 40 N.J. at 35, considering the nature of the right implicated and our view of the State's reliance on defendant's statement to prove its case, we conclude that failing to assess the voluntariness of defendant's inculpatory statement—absent a strategic reason for doing so—would amount to ineffective assistance of counsel. Said differently,

if defendant's confession were suppressed as involuntary, the State would be hard pressed to prove strict liability for drug-induced death based on the record before us. Therefore, we deem it necessary for the PCR court to conduct an evidentiary hearing on this issue, take testimony from plea counsel subject to cross-examination, and make findings on the record. We decline to summarily dismiss defendant's claim, absent testimony from plea counsel regarding what actions or inactions were taken related to the interrogation video and the reasons underlying those decisions.

IV.

We next consider defendant's contention that the PCR court should have granted an evidentiary hearing to further explore whether defense counsel was ineffective at sentencing. Defendant argues that the trial court should have considered mitigating factors two—the defendant did not contemplate that her conduct would cause or threaten serious harm—and four—substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense. N.J.S.A. 2C:44-1(b)(2), (4). Defendant argues that these factors are relevant because she was a drug user selling to support her drug habit and did not have any desire for the victim to die.

A-2079-24

At the outset we note that "allegations of improper consideration of aggravating and mitigating factors and consecutive sentencing guidelines [are] not cognizable claims on post-conviction relief." State v. Acevedo, 205 N.J. 40, 47 (2011) (citing State v. Flores, 228 N.J. Super. 586, 596-97 (App. Div. 1988)).

While we therefore do not consider defendant's sentencing argument to be cognizable in a petition for post-conviction relief, we nonetheless address the merits of her argument. As to mitigating factor four, the PCR court found that it would not "be particularly dispositive of the sentence [defendant] received." Review of the record indicates that, although not expressly raised as mitigating factors two and four, defense counsel proffered sufficient background information at sentencing for the trial court to consider those factors. At sentencing, defense counsel requested the court consider mitigating factors eight and nine,[2] stating,

> [Defendant] was a daily heroin addict herself, and she was using it for about four years and I believe that her becoming an addict was because she lost her husband . . . . So, my client was not some drug dealer out there selling drugs, not caring about other people to make a living. She, too, could have died from overdose

---

[2] Factor eight is "[t]he defendant's conduct was the result of circumstances unlikely to recur," and factor nine is "[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense." N.J.S.A. 2C:44-1(b)(8), (9).

A-2079-24

from fentanyl poisoning. By the grace of God she didn't, but unfortunately, this young man did.

. . . .

I respectfully ask . . . that you consider mitigating factor, I believe it's [e]ight, [n]ine, that she didn't intend to harm anyone. As an addict she was supporting her addiction by selling drugs. She couldn't find work herself.

Thus, considering the sentencing court was aware of this information, defendant fails to establish the second Strickland prong by demonstrating that the failure to explicitly present mitigating factors two and four affected the outcome of her sentence. See Strickland, 466 U.S. at 694. Therefore, we affirm the PCR court's denial of defendant's requested relief on this issue.

To the extent we have not addressed them, any remaining arguments made by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

22